TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

S. LANE TUCKER
United States Attorney
District of Alaska

DANIEL J. MARTIN
LAURA J.S. BROWN
United States Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
150 M Street, NE
Washington, DC 20002
Daniel.Martin3@usdoj.gov
202-307-1056

*Attorneys for the United States*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 3:23-CV-00073-JMK |
| Plaintiff, | |
| v. | **CONSENT DECREE** |
| ROBERT YUNDT HOMES, LLC, and ROBERT D. YUNDT II, | |
| Defendants. | |

## <u>CONSENT DECREE</u>

# Table of Contents

I.  JURISDICTION AND VENUE .................................................. 7

II.  APPLICABILITY ................................................................... 7

III.  DEFINITIONS...................................................................... 9

IV.  CIVIL PENALTY ................................................................ 12

V.  INJUNCTIVE RELIEF ........................................................ 13

VI.  REPORTING...................................................................... 16

VII.  CERTIFICATION ................................................................ 19

VIII.  STIPULATED PENALTIES................................................. 19

IX.  FORCE MAJEURE ............................................................. 23

X.  DISPUTE RESOLUTION .................................................... 26

XI.  SITE ACCESS AND INFORMATION COLLECTION AND
RETENTION .................................................................... 29

XII.  SCOPE AND EFFECT/RESERVATION OF RIGHTS ....... 32

XIII.  COSTS ............................................................................... 34

XIV.  NOTICES ........................................................................... 34

XV.  EFFECTIVE DATE ............................................................. 35

XVI.  RETENTION OF JURISDICTION ...................................... 36

XVII.  MODIFICATION.................................................................. 36

XVIII.  TERMINATION .................................................................. 36

XIX.  PUBLIC COMMENT .......................................................... 38

XX.  SIGNATORIES/SERVICE ................................................. 38

XXI.  INTEGRATION .................................................................. 39

XXII.  26 U.S.C. § 162(f)(2)(A)(ii) IDENTIFICATION ................. 39

XXIII.  HEADINGS........................................................................ 39

XXIV.  FINAL JUDGMENT............................................................ 40

Page 2

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 2 of 111

**XXV.** **APPENDICES** ............................................................................................. **40**

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

WHEREAS, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), filed the Complaint in this action on April 7, 2023, alleging that the Defendants Robert Yundt Homes, LLC ("Robert Yundt Homes") and Robert D. Yundt, II ("Mr. Yundt," and collectively "Defendants"), violated and remain in violation of Sections 301(a) and 309(d) of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311(a), 1319(d);

WHEREAS, the Complaint alleges that Defendants violated CWA Section 301(a) by discharging fill material into waters of the United States at two sites in Wasilla, Alaska, the first in August 2020, and the second between April 2019 and December 2019, without a permit from the United States Army Corps of Engineers;

WHEREAS, the Complaint further alleges that Defendants violated CWA Section 301(a) at the first site, located at 1165 East Westpoint Drive in Wasilla, Alaska and referred to therein as the Wasilla Lake Site, by using heavy earthmoving equipment to relocate and discharge fill material, such as rip rap rock, gravel, and topsoil into wetlands adjacent to Wasilla Lake and below the ordinary high water mark of Wasilla Lake;

WHEREAS, the Complaint further alleges that Defendants violated CWA Section 301(a) at the second site, located at 5530 and 5560 East Cherry Circle in Wasilla, Alaska and referred to therein as the Cottonwood Lake Sites, by using heavy earthmoving equipment to relocate and discharge gravel, native organic soil, woody debris, slash, and logs into wetlands adjacent to Cottonwood Lake;

WHEREAS, the Complaint further alleges that Robert Yundt Homes sought to resolve its liability for these violations by entering into two Administrative Orders on Consent with the EPA, effective November 2, 2021;

WHEREAS, the Complaint further alleges that the first order concerning the Wasilla Lake Site, referred to therein as the Wasilla Lake Order, required Robert Yundt Homes to submit a Restoration Work Plan to EPA by December 17, 2021 to restore the site, and, after obtaining EPA approval, finish implementing the Restoration Work Plan by July 31, 2022;

WHEREAS, the Complaint further alleges that the second order concerning the Cottonwood Lake Sites, referred to therein as the Cottonwood Lake Order, required Robert Yundt Homes to submit a Restoration Work Plan to EPA by December 17, 2021 to restore the site; after obtaining EPA approval, finish implementing the Restoration Work Plan by July 31, 2022; and execute a restrictive environmental covenant to protect natural conditions on Lot 24A at the Cottonwood Lake Sites;

WHEREAS, the Complaint further alleges that Robert Yundt Homes never completed the required restoration and mitigation work agreed to and ordered by the Wasilla Lake Order and Cottonwood Lake Order;

WHEREAS, the Complaint seeks injunctive relief against Defendants to comply with the Wasilla Lake Order and Cottonwood Lake Order and complete the required restoration work and mitigation work;

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

WHEREAS, the Complaint seeks the imposition of civil penalties against Robert Yundt Homes for violating the Wasilla Lake Order and Cottonwood Lake Order,

WHEREAS, the Complaint seeks the imposition of civil penalties against Mr. Yundt for violating CWA Section 301(a);

WHEREAS, the United States and Defendants ("Parties") agree and recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest;

NOW, THEREFORE, before the taking of any testimony upon the pleadings, without the adjudication of any issue of fact or law except as provided in Section I of this Consent Decree, and with the consent of the Parties, **IT IS HEREBY ADJUDGED, ORDERED, AND DECREED** as follows:

## I.  JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over the claims in the Complaint, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and personal jurisdiction over Defendants.

2.     Venue lies in this judicial district pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b)(1)–(2), 1395(a), because Defendants reside and are located in this judicial district, a substantial part of the events or omissions giving rise to the claims alleged in the Complaint occurred in this judicial district, and the properties that are the subject of the action are located in this judicial district.

3.     For purposes of this Consent Decree, or any action to enforce this Consent Decree, Defendants consent to the Court's jurisdiction over this Consent Decree and any such action and over Defendants, and Defendants consent to venue in this judicial district.

4.     For purposes of this Consent Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Section(s) 301, 309, and 404 of the CWA, 33 U.S.C. §§ 1311, 1319, and 1344.

## II.  APPLICABILITY

5.     The obligations of this Consent Decree apply to and are binding upon Defendants and any successors, assigns, or other persons otherwise bound by law whether or not any such person has notice of this Consent Decree.

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

6.     The Parties agree Defendants' obligations under this Consent Decree are joint and several.

7.     No transfer of ownership or other interest in the Sites, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendants of their obligation to ensure that the terms of the Consent Decree are implemented.

8.     As a condition of any transfer of ownership or other interest in the Sites, Defendants shall reserve all rights necessary to comply with this Consent Decree.  No transfer of ownership or other interest in the Sites, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendants of their obligations to ensure that the terms of the Consent Decree are implemented, unless:  (1) the transferee agrees to undertake the obligations required by this Consent Decree and to be substituted for Defendants as a party under the Consent Decree and thus be bound by the terms thereof; and (2) the United States consents to relieve Defendants of their obligations.  The United States' decision to refuse to approve the substitution of the transferee for Defendants shall not be subject to judicial review.  At least 30 Days prior to such transfer, Defendants shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to the United States in accordance with Section XIV (Notices).  Any attempt to transfer ownership or other interest operation of the Sites without complying with this Paragraph constitutes a violation of this Consent Decree.

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

9. Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Consent Decree, including, for example, any contractor or consultant retained to perform work required under this Consent Decree. Defendants shall condition any such contract upon performance that conforms to the terms of this Consent Decree. The United States shall not be considered a party to any such contract.

10. In any action to enforce this Consent Decree against Defendants, Defendants shall not raise as a defense the failure by any of its officers, directors, employees, agents, successors, assigns, contractors, consultants, or any person acting in concert or participation with Defendants, to take any actions necessary to comply with the provisions of this Consent Decree.

11. It is the express purpose of the Parties in entering this Consent Decree to further the objective set forth in CWA section 101(a), 33 U.S.C. § 1251(a).

## III. DEFINITIONS

12. Terms used in this Consent Decree that are defined in the CWA or in regulations promulgated pursuant to the CWA shall have the meanings assigned to them in the CWA or such regulations, unless otherwise provided in this Consent Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK
Page 9

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 9 of 111

"Complaint" means the complaint filed by the United States in this action, *United States v. Robert Yundt Homes, LLC*, No. 3:23-cv-73, Dkt. No. 1 (D. Alaska Apr. 7, 2023).

"Consent Decree" or "Decree" means this Decree and all appendices listed in Section XXV (Appendices) and all modifications made effective in accordance with Section XVII (Modification).

"Corps" means the United States Army Corps of Engineers and any of its successor departments or agencies.

"Cottonwood Lake Order" means the EPA Administrative Order on Consent entered as Docket No. CWA-10-2022-0006, attached to the Complaint as Exhibit B, and attached to this Decree as Appendix B.

"Cottonwood Lake Sites" means (1) the real property that is currently owned by Robert Yundt Homes at 5560 East Cherry Circle in Wasilla, Alaska, also designated as Lot 24A, within Section 32, Township 18 North, Range 1 East, Seward Meridian, and (2) the real property that was owned by Robert Yundt Homes at the time of the violations in 2019 at 5530 East Cherry Circle in Wasilla, Alaska, also designated as Lot 6A, within Section 32, Township 18 North, Range 1 East, Seward Meridian.

"CWA" means the Clean Water Act, 33 U.S.C. §§ 1251-1388.

"Day" means a calendar day unless expressly stated to be a business day.  In computing any period of time for a deadline under this Consent Decree, where the last

day would fall on a Saturday, Sunday, or federal holiday, the period runs until the close of business of the next business day.

"Defendants" means Robert Yundt Homes, LLC and Robert D. Yundt, II.

"DOJ" means the United States Department of Justice and any of its successor departments or agencies.

"EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies.

"Effective Date" means the date provided in Section XV (Effective Date).

"Final Stabilization Date" means one week (7 days) after this Consent Decree is entered.

"Paragraph" means a portion of this Consent Decree identified by an Arabic numeral.

"Parties" means the United States and the Defendants.

"Request for Termination" means the written request presented by Defendants to the United States in accordance with Section XVIII (Termination).

"Section," when not used in conjunction with the CWA (e.g., Section 404 of the CWA), means a portion of this Decree identified by a Roman numeral.

"Sites" means the Wasilla Lake Site and Cottonwood Lake Sites.

"United States" means the United States of America, acting on behalf of the EPA.

Page 11

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 11 of 111

"Wasilla Lake Order" means the EPA Administrative Order on Consent entered as Docket No. CWA-10-2022-0007, attached to the Complaint as Exhibit A, and attached to this Decree as Appendix A.

"Wasilla Lake Site" means the real property that is currently owned by Trenitie Yundt at 1165 Westpoint Drive in Wasilla, Alaska, within Section 10, Township 17 North, Range 1 West, Seward Meridian.

## IV.    CIVIL PENALTY

13.    Within 30 Days after the Effective Date of this Consent Decree, Defendants shall pay the sum of $77,500 as a civil penalty, together with interest accruing from the date on which this Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 on the lodging date.

14.    Defendants shall make the above-referenced payment by FedWire Electronic Funds Transfer ("EFT" or wire transfer) to the DOJ account, in accordance with Instructions provided to Defendants by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of Alaska after the Effective Date.   The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendants shall use to identify such payment.   The FLU will provide the payment instructions to:

> Brian J. Stibitz
> 500 L Street, Suite 300
> Anchorage, Alaska 99501
> Main: 907-222-7100

Page 12

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 12 of 111

Direct: 907-222-7102
Email: *brian@reevesamodio.com*

on behalf of Defendants. Defendants may change the individual to receive payment

instructions on its behalf by providing written notice of such change to the United States

in accordance with Section XIV (Notices).

15.     At the time of payment, Defendants shall send notice that payment has been

made (i) to EPA via email at steffen.craig@epa.gov and via regular mail at EPA

Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; and

(ii) to the United States via email in accordance with Section XIV (Notices). Such notice

shall state that the payment is for the civil penalty owed pursuant to the Consent Decree

in *United States v. Robert Yundt Homes, LLC*, and shall reference the civil action number,

CDCS Number and DOJ case number 90-5-1-1-22275.

16.     Defendants shall not deduct any penalties paid under this Consent Decree

pursuant to this Section or Section VIII (Stipulated Penalties) in calculating its federal

income tax.

## V.     INJUNCTIVE RELIEF

17.     Permanent Injunction. Defendants and Defendants' agents, successors, and

assigns are enjoined from discharging any pollutant into waters of the United States,

unless such discharge complies with the provisions of the CWA and regulations

promulgated pursuant to the CWA. Except in the event of conflict with this Decree,

United States v. Robert Yundt Homes, LLC, et al.
Page 13                                                         No. 3:23-CV-00073-JMK

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 13 of 111

Defendants shall strictly comply with the Wasilla Lake Order and Cottonwood Lake Order.

18. _Restoration_.  Defendants shall restore the Sites by performing all work set forth in, and in accordance with, Appendix C (Wasilla Lake Restoration Work Plan) and Appendix D (Cottonwood Lake Restoration Work Plan) in Section XXV (Appendices) of this Consent Decree, by the Final Stabilization Date. Within 30 Days after completion of the work, Defendants shall provide written notice to the United States at the addresses specified in Section XIV (Notices).

19. _Completion_.  Upon completion of the restoration work, Defendants shall submit the Completion Reports required in the Wasilla Lake Order and Cottonwood Lake Order to the United States in accordance with Section VI (Reporting Requirements).

20. _Mitigation and Preservation_.  Within 30 Days after EPA approves the Completion Report required by Cottonwood Lake Order 5.6, Appendix B at 10, as compensatory mitigation for fill material at the Cottonwood Lake Sites associated with (1) the mounded septic system infrastructure on Lot 24A and (2) the house pad on Lot 6A that will remain in waters of the United States, and to address the temporal losses of wetlands functions at the Cottonwood Lake Sites, Defendants shall execute and record an Environmental (Restrictive) Covenant according to the terms of the Cottonwood Lake Order. In addition to the requirements of the Cottonwood Lake Order:

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

a.     The Environmental (Restrictive) Covenant shall provide the United States with the right to enforce it by appropriate legal proceedings, including but not limited to enforcement of this Consent Decree.

b.     Concurrent with the recording of the Environmental (Restrictive) Covenant, Defendants shall record a true and correct copy of this Consent Decree with the Alaska Department of Natural Resources Recorder's Office.  Thereafter, each deed, title, conservation easement, or other instrument conveying an interest in any portion of restricted area on Lot 24A shall (1) contain a notice stating that Lot 24A is subject to this Consent Decree and the Environmental (Restrictive) Covenant; and (2) refer to the recorded location of this Consent Decree and any restrictions applicable to Lot 24A under this Consent Decree.

c.     Within 30 Days after the recording required by subparagraph (b) above, Defendants shall provide written notice of such completion, along with a true and correct copy of the recorded instrument and Consent Decree, to the United States at the addresses specified in Section XIV (Notices).

d.     Defendants shall not disturb—or allow any other person to disturb—the restricted portion of Lot 24A in any manner inconsistent with the foregoing subparagraphs or the recorded instrument.

21.     Monitoring, Maintenance, and Adaptive Management.  After Defendants complete restoration work in accordance with Paragraph 18, and submitted the

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

Completion Report in accordance with Paragraph 19, Defendants shall monitor, maintain, and adaptively manage the Sites in accordance with the Wasilla Lake Order in Appendix A and the Cottonwood Lake Order in Appendix B. Defendants shall submit copies of the Annual Monitoring Reports required in the Wasilla Lake Order and Cottonwood Lake Order reports to the United States in accordance with Section VI (Reporting Requirements). Within 30 Days after completion of all monitoring, maintenance, and adaptive management, Defendants shall provide written notice to the United States at the addresses specified in Section XIV (Notices).

22.     <u>Permits</u>. Where any obligation under this Section requires Defendants to obtain a federal, state, or local permit or approval, Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendants may seek relief under the provisions of Section IX (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendants have submitted timely and complete applications and have taken all other actions necessary to obtain all such permits or approvals.

## VI.     REPORTING

23.     Defendants shall submit the following reports to the EPA at the addresses set forth in Section XIV (Notices):

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

a.　　At those times specified by the EPA, the Completion Report and the Annual Monitoring Reports required by the Wasilla Lake Order and Cottonwood Lake Order.

b.　　On or before July 31st and January 31st of each year following the effective date of this Consent Decree, until termination of this Consent Decree pursuant to Section XVIII (Termination), a semi-annual report for the preceding six months that includes:

i.　　The status of the Restoration work required by Paragraph 18.

ii.　　The application and approval status of any permits required for Restoration.

iii.　　Any problems encountered that may delay the Restoration work beyond the required Final Stabilization Date, along with a proffered solution to complete the Restoration work by the required Final Stabilization Date.

iv.　　Any non-compliance with this Decree, an explanation of the violation's cause, and a description of the remedial steps taken or to be taken to correct or mitigate the violation.

c.　　Within 10 Days of any violation of this Decree, a written notice to the United States and the EPA, as provided in Section XIV (Notices) of the violation, an explanation of the violation's likely cause if not yet known, and a

Page 17

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

Case 3:23-cv-00073-JMK　Document 14　Filed 09/26/23　Page 17 of 111

description of how the violation has been or will be corrected. If the cause of a violation cannot be fully explained at the time this notice is due, Defendants shall so state in the notice. In these cases, Defendants shall investigate the cause of the violation and submit an amendment to the report, including a full explanation of the cause of the violation, within 14 Days after the day Defendants became aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendants of their obligation to provide the notice required by Section IX (Force Majeure), if applicable.

      d.     As soon as possible, and in no event later than 24 hours from the time discovered, a telephonic notice to the EPA at (907) 271-3411 or, if that number is unavailable, (907) 271-3914 of any action or event related to this Decree that may pose an immediate threat to the public health or welfare or the environment.

24.     The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations otherwise required by federal, state, or local law, regulation, permit, or other requirement.

25.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

## VII.    CERTIFICATION

26.    Every written report or notice submitted by Defendants under Section V (Injunctive Relief), Section VI (Reporting), Section IX (Force Majeure), Section XI (Site Access and Information Collection and Retention) shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I have no personal knowledge that the information submitted is other than true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

## VIII.    STIPULATED PENALTIES

27.    Defendants shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Consent Decree, including any Appendix listed in Section XXV (Appendices), according to all applicable requirements of this Consent Decree and within the specified time schedules established by or approved under this Consent Decree.

Page 19

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 19 of 111

28.     Late payment of civil penalty.  If Defendants fail to pay the civil penalty

required to be paid under Section IV (Civil Penalty) when due, Defendants shall pay a

stipulated penalty of $500 per Day for each Day that the payment is late.

29.     Non-compliance with injunctive relief.  The following stipulated penalties

shall accrue per violation per Day for each violation of the various prohibitions and

obligations set forth in Section V (Injunctive Relief):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,000 | 15th through 30th Day |
| $3,000 | 31st Day and beyond |

30.     Non-compliance with reporting requirements.  The following stipulated

penalties shall accrue per violation per Day for each violation of the requirements of

Section VI (Reporting):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th Day |
| $1,000 | 15th through 30th Day |
| $1,500 | 31st Day and beyond |

31.     Non-compliance with all other requirements.  The following stipulated

penalties shall accrue per violation per Day for each violation of any other requirement of

Page 20

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 20 of 111

this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th Day |
| $1,000 | 15th through 30th Day |
| $1,500 | 31st Day and beyond |

32.     Stipulated penalties under this Section shall begin to accrue on the Day a violation occurs and shall continue to accrue until the violation ceases.  Each violation shall trigger its own stipulated penalty and multiple stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

33.     Defendants shall pay any stipulated penalty within 30 Days after receiving the United States' written demand.

34.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

35.     Stipulated penalties shall continue to accrue during any Dispute Resolution, but need not be paid until the following:

a.      If the dispute is resolved by agreement of the Parties or by a decision of the EPA that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days after the effective date of the agreement or the receipt of the EPA's decision.

Page 21

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 21 of 111

b.      If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days after receiving the Court's decision or order, except as provided in subparagraph (c), below.

c.      If any Party appeals the Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within 15 Days after the mandate issues.

36.     Defendants shall pay stipulated penalties owing to the United States in the manner set forth in Section IV (Civil Penalty) and with the confirmation notices required therein, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

37.     If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

38.     The payment of penalties and interest, if any, shall not alter in any way Defendants' obligation to complete performance of this Consent's Decree's requirements.

39.     <u>Non-Exclusivity of Remedy</u>.  Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of

Page 22

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 22 of 111

Section XII (Scope and Effect/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendants' violation of this Decree or applicable law, including but not limited to an action against the Defendants for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## IX. FORCE MAJEURE

40. "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation. The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree. "Force majeure" does not include Defendants' failure to obtain required permits to perform under this Decree,

Page 23

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 23 of 111

unless Defendants have timely submitted all information required by the relevant permitting authority.

41.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure, Defendants shall provide notice by telephone to Mark Jen at (907) 271-3411 and by email at jen.mark@epa.gov, within 72 hours of when Defendants first knew that the event might cause a delay.  Within seven Days thereafter, Defendants shall provide in writing to the EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a force majeure if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have known.

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

42. If the United States agrees that the delay or anticipated delay is attributable to a force majeure, the United States may extend the time for performance of the obligations under this Consent Decree that are affected by the force majeure for as long as necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. The United States will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure.

43. If the United States does not agree that the delay or anticipated delay has been or will be caused by a force majeure, EPA will notify Defendants in writing of its decision.

44. If Defendants elect to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution) over a claim of force majeure, it shall do so no later than 14 Days after receipt of the United States' decision under Paragraphs 42–43. In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of this Section. If

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK
Page 25

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 25 of 111

Defendants carry this burden, the delay at issue shall be deemed not to be a violation of the affected obligation of this Consent Decree.

## X.    DISPUTE RESOLUTION

45.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendants arising under this Decree.

46.    <u>Informal Dispute Resolution</u>.  Any dispute under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendants send the United States a written Notice of Dispute to the addresses set forth in Section XIV (Notices).  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

47.     Formal Dispute Resolution.  To invoke formal dispute resolution, Defendants shall send the United States (in accordance with Section XIV (Notices)) a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

48.     The United States shall serve its Statement of Position within 45 Days of receipt of Defendants' Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendants unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph within 14 Days of their receipt of the United States' Statement of Position.

49.     Judicial Dispute Resolution.  Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States a motion requesting judicial resolution of the dispute.  The motion (a) must be filed within 14 Days after receipt of the United States' Statement of Position pursuant to the preceding Paragraph; (b) may not raise any issue not raised in the informal dispute resolution process required by this Section, unless the United States raises a new issue of law or fact in its Statement of Position; (c) shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation; and

Page 27

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 27 of 111

(d) shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

50.     The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court.  Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

51.     <u>Standard of Review</u>.

      a.     <u>Disputes Concerning Matters Ordinarily Accorded Record Review</u>. Except as otherwise provided in this Consent Decree, in any dispute pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules, or any other items requiring approval by the EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are ordinarily accorded review on the administrative record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the record in existence after Formal Dispute Resolution, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

      b.     <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other dispute, Defendants shall bear the burden of demonstrating that its position complies with this Consent Decree.

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

52.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Section VIII (Stipulated Penalties).  If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI.     SITE ACCESS AND INFORMATION COLLECTION AND RETENTION

53.     Until five years after this Decree is terminated, the United States and its representatives, including attorneys, contractors, consultants, and EPA personnel, shall have the right of entry into the Sites  at all reasonable times, upon presentation of credentials, to:

a.     monitor the progress of Injunctive Relief required under this Consent Decree;

b.     verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.     obtain samples and, upon request, splits of any samples taken by the Defendants or its representatives, contractors, or consultants;

d.     obtain documentary evidence, including photographs and similar data; and

Page 29

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 29 of 111

e.     assess Defendants' compliance with this Consent Decree.

65.    Upon request, Defendants shall provide the United States or its authorized representative splits of any samples taken by Defendants.

66.    Until five years after the Day of termination of this Consent Decree, Defendants shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, that relate in any manner to Defendants' performance of their obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

67.    At least 90 Days before the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United States, at the addresses set forth in Section XIV (Notices), that their information-retention period is ending, and if they intend to destroy any documents that were required to be retained. Upon request by the United States made before the conclusion of the information-retention period, and at least 90 Days before the destruction of any documents, records,

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

or other information subject to the requirements of the preceding Paragraph, Defendants shall deliver any such documents, records, or other information to the United States.

68.    Defendants may assert that certain documents, records, or other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendants assert such a privilege, they shall provide the following in writing:  (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendants.  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

69.    Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

70.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or

obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII.   SCOPE AND EFFECT/RESERVATION OF RIGHTS

71.     This Consent Decree resolves and shall constitute a complete and final settlement of the civil claims of the United States alleged in the Complaint through the date of the lodging of this Consent Decree.

72.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree and applicable law. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the CWA or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 71.

73.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Sites, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 71 above.

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

74.    Nationwide Permit 32. The Parties acknowledge that, as of the Effective Date, Nationwide Permit 32, 86 Fed. Reg. 73,522, 73,579 (Dec. 27, 2021), provides CWA Section 404 authorization, subject to the conditions provided in Nationwide Permit 32 and this Consent Decree, for certain dredged or fill material that was placed as of August 31, 2021 at the Sites to remain in place.  The Parties further acknowledge that, as of the Effective Date, Nationwide Permit 32, 86 Fed. Reg. 73,522, 73,579 (Dec. 27, 2021), provides CWA Section 404 authorization, subject to the conditions provided in Nationwide Permit 32 and this Consent Decree, for the discharge of dredged or fill material that is necessary for Defendants to fulfill the restoration requirements of this Consent Decree.

75.    This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with any provisions of federal, State, or local laws, regulations, or permits.

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

76.     Nothing in this Consent Decree shall limit the ability of the Corps to issue, modify, suspend, revoke, or deny any individual permit or any nationwide or regional permit, nor shall this Consent Decree limit EPA's ability to exercise its authority pursuant to Section 404(c) of the CWA, 33 U.S.C. § 1344(c).

77.     This Consent Decree does not limit or affect the rights of Defendants or of the United States against any third parties to this Consent Decree, nor does it limit the rights of such third parties against Defendants, except as otherwise provided by law.

78.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party to this Consent Decree.

## XIII.     COSTS

79.     The Parties shall bear their own costs of this action, including attorneys' fees, except that, should Defendants subsequently be determined by the Court to have violated any provision of this Consent Decree, the United States shall be entitled to collect the costs, including attorneys' fees, incurred in any action to enforce this Consent Decree.

## XIV.     NOTICES

80.     Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing, sent by email, and addressed as follows:

As to DOJ by email:

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

Daniel Martin        Daniel.Martin3@usdoj.gov

Laura Brown          Laura.J.S.Brown@usdoj.gov

Re: DJ # 90-5-1-1-22275

As to EPA by email:

Mark Jen             jen.mark@epa.gov

Patrick Johnson      johnson.patrick@epa.gov

As to the Defendants:

Robert D. Yundt II   ryh.accts@gmail.com

Brian J. Stibitz     brian@reevesamodio.com


81.    Any Party may, by written notice to the other Parties in accordance with this Section, change its designated notice recipient or notice address provided above.

82.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing or transmission by email, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.    EFFECTIVE DATE

83.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

## XVI.    RETENTION OF JURISDICTION

84.    The Court retains jurisdiction over this case for the purpose of resolving disputes arising under this Consent Decree, entering orders modifying this Consent Decree pursuant to Sections X and XVII, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVII.    MODIFICATION

85.    The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties and approved by the Court; provided, however, that the Parties may modify the Appendices listed in Section XXV (Appendices) and the Final Stabilization Date by written agreement signed by all the Parties.

86.    Any disputes concerning modification of this Consent Decree shall be resolved pursuant to Section X (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 51, the party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII.    TERMINATION

87.    After the Defendants have completed all of the requirements of Section IV (Civil Penalty) and Section V (Injunctive Relief), and has complied with all other requirements of this Consent Decree, Defendants may serve upon the United States a

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

Request for Termination, certifying that Defendants have satisfied those requirements, together with all necessary supporting documentation.

88.     Following receipt by the United States of Defendants' Request for Termination, the Parties shall confer informally concerning the Request for Termination and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation or other appropriate document requesting termination of the Consent Decree.

89.     If the United States does not agree that the Consent Decree may be terminated, Defendants may invoke Dispute Resolution under Section X (Dispute Resolution).  However, Defendants shall not seek Dispute Resolution of any dispute regarding termination until 30 Days after service of its Request for Termination.  If the United States disputes that the criteria for termination have been met, this Consent Decree shall remain in effect pending resolution of the dispute by the Parties or the Court.

90.     Irrespective of Paragraphs 87–89 above, termination of this Consent Decree does not extinguish the requirements of Paragraph 17–21.  In addition, irrespective of Paragraphs 87–89 above, termination of this Consent Decree does not affect the expiration of Defendants' record retention obligations under Section XI (Site Access and Information Collection and Retention).

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

## XIX.    PUBLIC COMMENT

91.     The Parties acknowledge that this Consent Decree shall be lodged with the Court for a period of not less than 30 Days to allow for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Consent Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Consent Decree.

## XX.    SIGNATORIES/SERVICE

92.     Each undersigned representative of Defendants and the U.S. Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the party he or she represents to this document.

93.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendants agrees to accept service of process by email with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to,

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

service of a summons. Defendants need not file an answer to the Complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXI. INTEGRATION

94. This Consent Decree constitutes the entire agreement among the Parties regarding the subject matter of the Consent Decree and supersedes all prior representations, agreements and understandings, whether oral or written, concerning the subject matter of the Consent Decree herein.

## XXII. 26 U.S.C. § 162(f)(2)(A)(ii) IDENTIFICATION

95. For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 1.162-21(b)(2), performance of Section V (Injunctive Relief) and Section XI (Site Access and Information Collection and Retention) is restitution, remediation, or required to come into compliance with law.

## XXIII. HEADINGS

96. Headings to the Sections, Paragraphs, or other provisions of this Consent Decree are provided for convenience and do not affect the meaning or interpretation of the provisions of this Consent Decree.

Page 39

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

Case 3:23-cv-00073-JMK  Document 14  Filed 09/26/23  Page 39 of 111

## XXIV.    FINAL JUDGMENT

97.    Upon approval and entry of this Consent Decree by the Court, as recorded on the Court's docket, this Consent Decree shall constitute and have the force and effect of a final judgment of the Court as to the United States and Defendants.

## XXV.    APPENDICES

98.    The following appendices are attached to and part of this Consent Decree:

Appendix A:    The Wasilla Lake Order - Administrative Order on Consent (Docket No. CWA-10-2022-0007)

Appendix B:    The Cottonwood Lake Order - Administrative Order on Consent (Docket No. CWA-10-2022-0006)

Appendix C:    EPA-Approved Wasilla Lake Restoration Work Plan

Appendix D:    EPA-Approved Cottonwood Lake Restoration Work Plan

### IT IS SO ORDERED.

IT IS SO ORDERED the 25th day of September 2023, at Anchorage, Alaska.


_____*/s/ Joshua M. Kindred*_____
JOSHUA M. KINDRED
UNITED STATES DISTRICT JUDGE

_____

### Remainder of Page Intentionally Blank

FOR THE UNITED STATES OF AMERICA:

07/21/2023
Date

TODD KIM
Assistant Attorney General
Environment and Natural
Resources Division

S. LANE TUCKER
United States Attorney
District of Alaska

/s/ DANIEL MARTIN

Digitally signed by
DANIEL MARTIN
Date: 2023.07.21
12:42:25 -04'00'

DANIEL J. MARTIN
LAURA J.S. BROWN
Environmental Defense Section
United States Department of Justice
P.O. Box 7611
Washington, DC 20044
202-307-1056
Daniel.Martin3@usdoj.gov

Page 41

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 41 of 111

FOR THE UNITED STATES OF AMERICA:

7/17/23
Date

BEVERLY LI
Regional Counsel
U.S. Environmental Protection Agency
Region 10, Office of Regional Counsel
1200 Sixth Avenue, Suite 155
Seattle, Washington 98101
(206) 553-8542
li.beverly@epa.gov

OF COUNSEL:
PATRICK B. JOHNSON
U.S. Environmental Protection Agency, Region 10
Alaska Operations Office
222 West 7th Ave., #19
Anchorage, Alaska 99513-7588
(907) 271-3914
johnson.patrick@epa.gov

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 42 of 111

FOR THE UNITED STATES OF AMERICA:

7-21-23

Date

/s/ Joseph G. Theis

JOSEPH G. THEIS
Acting Director,
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance
Assurance
U.S. Environmental Protection Agency

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 43 of 111

United States v. Robert Yundt Homes, LLC, et al.
Page 43                                                   No. 3:23-CV-00073-JMK

FOR DEFENDANTS:

7/10/23
Date

_____
Robert D. Yundt II
Manager, Member
Robert Yundt Homes, LLC
357 E. Parks Hwy., Suite 200
Wasilla, AK 99654

7/10/23
Date

_____
Robert D. Yundt II

Approved as to form:

_____
Brian J. Stibitz
Reeves Amodio LLC
500 L Street, Suite 300
Anchorage, AK 99501
907-222-7100
brian@reevesamodio.com

*Attorney(s) for Defendant(s)*

Page 44

United States v. Robert Yundt Homes, LLC, et al.
No. 3:23-CV-00073-JMK

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 44 of 111

# Appendix A

BEFORE THE
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

In the Matter of:

ROBERT YUNDT HOMES, LLC,

Wasilla Lake - Wasilla, Alaska,

Respondent.

DOCKET NO. CWA-10-2022-0007

**ADMINISTRATIVE ORDER ON CONSENT**

## I.   **INTRODUCTION**

1.1.   The U.S. Environmental Protection Agency ("EPA") makes the findings set forth in Section IV below and is issuing this Administrative Order on Consent ("Order") to Robert Yundt Homes, LLC ("Respondent") under the authorities in Sections 308 and 309(a) of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1318 and 1319(a).

1.2.   This Order is mutually entered into by EPA and Respondent.

1.3.   EPA alleges that Respondent violated Section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging a pollutant or pollutants into the navigable waters from a point source without authorization by a Department of Army permit issued by the U.S. Army Corps of Engineers ("Corps") pursuant to Section 404 of the CWA, 33 U.S.C. § 1344.

1.4.   By entering into this Order, Respondent (1) consents to EPA's authority to issue and enforce this Order; (2) neither admits nor denies the factual allegations as set forth in this Order; (3) agrees to undertake all actions required by the terms and conditions of this Order; (4) consents to be bound by the requirements set forth herein; and (5) agrees not to contest the authority of EPA to issue or enforce this Order or the validity of any terms or conditions in this Order.

## II.  STATUTORY AUTHORITY

2.1.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant by any person except, *inter alia*, as authorized by a permit issued by the Corps pursuant to Section 404 of the CWA, 33 U.S.C. § 1344.

2.2.    Section 309(a) of the CWA, 33 U.S.C. § 1319(a), provides that whenever EPA finds that any person is in violation of any condition or limitation that implements, *inter alia*, Sections 301(a) and 404 of the CWA, 33 U.S.C. §§ 1311(a) and 1344, EPA shall issue an order requiring such person to comply with such condition or limitation, and shall specify a time for compliance that EPA determines to be reasonable taking into account the seriousness of the violation and any good faith efforts to comply with applicable requirements.

2.3.    Section 308(a) of the CWA, 33 U.S.C. § 1318(a), authorizes EPA to require the submission of any information required to carry out the objectives of the CWA.

2.4.    The authorities in Sections 308 and 309(a), 33 U.S.C. §§ 1318 and 1319(a), have been delegated to the Regional Administrator for EPA Region 10 and have been redelegated to the Region 10 Director of the Enforcement and Compliance Assurance Division ("Director").

## III.  DEFINITIONS

3.1.    All terms used, but not defined, in this Order have the meanings provided to them in the CWA, 33 U.S.C. § 1251 *et seq*., and the EPA regulations promulgated under the CWA.

3.2.    "Act" or "CWA" means the Clean Water Act, 33 U.S.C. § 1251 *et seq.*

3.3.    "Day" or "days" means a calendar day or calendar days unless expressly stated to be a business day.  When computing any period of time under this Order, should the last day fall

In the Matter of:  Robert Yundt Homes, LLC
Docket Number:  CWA-10-2022-0007
Administrative Order on Consent
Page 2 of 17

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington 98101

on a Saturday, Sunday, or federal holiday, the period shall run until the end of the next business day.

3.4. "Discharge of a pollutant," as defined in Section 502(12) of the CWA, means *inter alia*, "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

3.5. "Discharge of dredged material," as defined in 40 C.F.R. § 232.2, means *inter alia*, "any addition of dredged material into, including redeposit of dredged material other than incidental fallback within, the waters of the United States."

3.6. "Discharge of fill material," as defined in 40 C.F.R. § 232.2, means *inter alia*, "the addition of fill material into waters of the United States."

3.7. "Dredged material," as defined in 40 C.F.R. § 232.2, means "material that is excavated or dredged from waters of the United States."

3.8. "Site" means the residential subdivision lot located adjacent to Wasilla Lake at 1165 East Westpoint Drive in Wasilla, Alaska within Section 10, Township 17 North, Range 1 West, Seward Meridian.

3.9. "Fill material," defined in 40 C.F.R. § 232.2, means *inter alia*, "material placed in waters of the United States where the material has the effect of: (i) replacing any portion of a water of the United States with dry land; or (ii) changing the bottom elevation of any portion of a water of the United States."

3.10. "Navigable waters," as defined in Section 502(7) of the CWA, means "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). In turn, "waters of the United States" is defined to include, *inter alia*, all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters

In the Matter of: Robert Yundt Homes, LLC
Docket Number: CWA-10-2022-0007
Administrative Order on Consent
Page 3 of 17

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington 98101

which are subject to the ebb and flow of the tide; tributaries to such waters; and wetlands adjacent to the foregoing waters. 40 C.F.R. § 120.2.

3.11. "Parties" means EPA and Respondent.

3.12. "Person," as defined in Section 502(5) of the CWA, means an "individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body." 33 U.S.C. § 1362(5).

3.13. "Point source," as defined in Section 502(14) of the CWA, means "any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

3.14. "Pollutant," as defined in Section 502(6) of the CWA, means "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt, and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6).

## IV.    **FINDINGS OF FACT AND LAW**

4.1. Respondent is a limited liability company licensed to conduct business in the State of Alaska and is therefore a "person" as defined by CWA Section 502(5), 33 U.S.C. § 1362(5).

4.2. At times relevant to this Order, Respondent operated at or controlled the Site, identified in Exhibit A of this Order.

In the Matter of: Robert Yundt Homes, LLC
Docket Number: CWA-10-2022-0007
Administrative Order on Consent
Page 4 of 17

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington 98101

4.3.    The Site contains wetlands that are adjacent to Wasilla Lake, a relatively permanent water.  Wasilla Lake has a continuous surface water connection to Cottonwood Creek, a perennial tributary with a continuous surface water connection to the Knik Arm of Cook Inlet.  The Knik Arm of Cook Inlet is subject to the ebb and flow of the tide, is a traditional navigable water, and is a therefore a water of the United States.  As such, Wasilla Lake and its adjacent wetlands are "navigable waters" within the meaning of CWA Section 502(7), 33 U.S.C. § 1362(7), and are "waters of the United States" within the meaning of 40 C.F.R. § 120.2.

4.4.    Beginning on or around August 10, 2020, and extending until on or around August 17, 2020, Respondent and/or persons acting on its behalf:

>    4.4.1    Used certain heavy earthmoving equipment, including a skid steer loader, excavator, and dump truck, to relocate and discharge rip rap rock, gravel, and topsoil at the Site; and

>    4.4.2    Placed those materials into wetlands adjacent to Wasilla Lake and below the ordinary high-water mark of Wasilla Lake.

4.5.    The purpose of Respondent's activities was to create a residential backyard with a grass lawn, discharge rip rap rock to stabilize the shoreline, and construct a floating dock affixed to the shoreline of Wasilla Lake.

4.6.    The equipment referenced in Paragraph 4.4.1 is a "point source" within the meaning of CWA Section 502(14), 33 U.S.C. § 1362(14).

In the Matter of:  Robert Yundt Homes, LLC
Docket Number:  CWA-10-2022-0007
Administrative Order on Consent
Page 5 of 17

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington  98101

4.7.    The dredged and/or fill materials that Respondent and/or persons acting on its behalf caused to be discharged, as referenced in Paragraph 4.4.1, included gravel, native organic soil, woody debris, slash, and logs, each of which constitutes "dredged material" and/or "fill material" within the meaning of 40 C.F.R. § 232.2, and each of which constitutes a "pollutant" within the meaning of CWA Section 502(6), 33 U.S.C. § 1362(6).

4.8.    By causing such dredged and/or fill materials to enter waters of the United States, Respondent engaged in the "discharge of pollutants" from a point source within the meaning of CWA Sections 301(a) and 502(12), 33 U.S.C. §§ 1311(a) and 1362(12).

4.9.    Because Respondent operated at the Site that resulted in the discharge of pollutants from a point source into navigable waters, Respondent and the Site are subject to the CWA at all times relevant to this Order.  Thus, any such discharge has been and is subject to the CWA.

4.10.    During all times relevant to this Order, Respondent did not apply for a Corps permit under Section 404 of the CWA, 33 U.S.C. § 1344.

4.11.    Respondent is a person who discharged pollutant(s) from point source(s) into navigable waters, without a permit under Section 404 of the CWA, 33 U.S.C. § 1344. Accordingly, each instance in which Respondent discharged pollutant(s) to navigable waters, is a violation of Section 301 of the CWA, 33 U.S.C. § 1311.

4.12.    Each day that the dredged and/or fill material remains in place without the required permit constitutes a violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

4.13.    Taking into account the seriousness of these violations and any good faith efforts to comply with applicable requirements, the parties acknowledge and agree that the schedule for compliance contained in Section V of this Order is reasonable and appropriate.

In the Matter of:  Robert Yundt Homes, LLC
Docket Number:  CWA-10-2022-0007
Administrative Order on Consent
Page 6 of 17

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington  98101

## V.   COMPLIANCE MEASURES

Based upon the foregoing findings and the authority granted to the undersigned Director, it is hereby ordered and agreed to in accordance with Sections 308 and 309(a) of the CWA, 33 U.S.C. §§ 1318 and 1319(a), that Respondent comply with the following actions:

5.1    Prohibition of Discharge: Respondent shall not discharge any additional pollutants into any waters of the United States at the Site except in compliance with this Order or a permit issued pursuant to the CWA.

5.2    Submission of Restoration Work Plan: No later than forty-five (45) days after the effective date of this Order, Respondent and/or persons acting on its behalf shall submit a Restoration Work Plan to EPA for review and approval. At a minimum, the Restoration Work Plan shall include the following:

5.2.1    A description of the removal of all rip rap rock, gravel, topsoil, and any other fill material that was discharged into wetlands adjacent to Wasilla Lake and below the ordinary high-water mark of Wasilla Lake at the Site;

5.2.2    A description of the new upland location for all rip-rap rock, topsoil, and any other fill material removed from wetlands adjacent to Wasilla Lake and below the ordinary high-water mark of Wasilla Lake at the Site;

5.2.3    A surveyed map depicting: (1) the current and future location of all rip-rap rock, topsoil, and/or other fill material in wetlands and/or below the ordinary high-water mark of Wasilla Lake; (2) the jurisdictional wetland boundary

In the Matter of:  Robert Yundt Homes, LLC
Docket Number:  CWA-10-2022-0007
Administrative Order on Consent
Page 7 of 17

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington  98101

identified by the Corps; and (3) the fixed locations where photographs will be taken for the Completion Report and subsequent Annual Monitoring Reports.

5.2.4   A description of how the location and alignment of the Site's shoreline will be restored as it existed prior to the activities described in Paragraph 4.4;

5.2.5   A description of how the shoreline at the Site will be regraded to its approximate contour and slope as it existed prior to the activities described in Paragraph 4.4;

5.2.6   A description of how all restoration work will be completed, including: (1) dates certain by which activities will commence; (2) a list of any heavy earthmoving equipment to be used and/or other equipment that will be employed to minimize wetland impacts; and (3) the name(s) and contact information for the person(s) and/or contractor(s), if any, that will complete the work under this Restoration Work Plan and this Order;

5.2.7   A list of the best management practices (BMPs) (including silt fences, silt curtains, work practices, etc.) Respondent will employ during the restoration activities to minimize to the maximum extent practicable: (1) the discharge of sediment and other pollutants to waters of the United States, including wetlands; and (2) soil compaction and damage to existing vegetation;

5.2.8   A description of how Respondent will comply with all requirements of any local, state, and/or federal authorizations and/or permits that will be necessary to complete the restoration work, including, but not limited to, under CWA Section 401, CWA Section 402, CWA Section 404, City of Wasilla and

In the Matter of: Robert Yundt Homes, LLC
Docket Number: CWA-10-2022-0007
Administrative Order on Consent
Page 8 of 17

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington 98101

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 53 of 111

Matanuska-Susitna Borough laws, codes, and ordinances, and/or Alaska state law;

5.2.9 A Revegetation Plan at the Site that prioritizes native, hydrophytic vegetation commonly found in healthy riparian lake wetland systems in south-central Alaska. The performance standard will require natural revegetation during the subsequent three years after restoration activities to achieve a 75% vegetation cover. If this performance standard is not achieved after three years of annual monitoring, EPA will require implementation of additional corrective measures, such as active vegetation planting at the Site;

5.2.10 A Three-Year Monitoring Plan describing the photographic monitoring and documentation for the restoration measures, including specific vegetation performance standards, at the Site; and

5.2.11 A Contingency Plan identifying the corrective actions Respondent will take in the event the performance standards for vegetation are not achieved.

5.3     Approval by EPA: The Restoration Work Plan shall be submitted to EPA representatives identified in Paragraph 6.1 for review and approval prior to commencement of restoration work at the Site. Upon receipt of the Restoration Work Plan, EPA will, within a reasonable time, review and approve the Restoration Work Plan or submit a request for additional information and/or request a Site visit. Respondent shall respond to an initial request

In the Matter of: Robert Yundt Homes, LLC
Docket Number: CWA-10-2022-0007
Administrative Order on Consent
Page 9 of 17

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington 98101

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 54 of 111

for additional information within thirty (30) days. EPA will review the response to the request for additional information within a reasonable time.

5.4　Notification to EPA: At least seven (7) days prior to commencing activities at the Site under the EPA-approved Final Restoration Work Plan, Respondent shall notify the EPA representatives identified in Paragraph 6.1.

5.5　Implementation: Respondent shall complete the activities required by the EPA-approved Restoration Work Plan, other than the annual monitoring requirements, no later than July 31, 2022.

5.6　Completion Report. Within thirty (30) days of completing the restoration activities described in the EPA-approved Final Restoration Work Plan, Respondent shall provide the EPA representatives identified in Paragraph 6.1 with a Completion Report, which shall include photographs of the Site conditions before and after compliance with this Order and implementation of the EPA-approved Final Restoration Work Plan. The photographs shall be taken from fixed locations identified in the EPA-approved Final Restoration Work Plan and include a description. EPA will review and approve the Completion Report within a reasonable time, not to exceed thirty (30) days from receipt of Respondent's written notification. EPA may request a Site visit to verify the completion of restoration activities consistent with the EPA-approved Final Restoration Work Plan and Order.

5.7　Annual Monitoring Reports. On or before the first, second, and third anniversaries of EPA's approval of the Completion Report, Respondent shall submit an annual monitoring report to the EPA representatives identified in Paragraph 6.1. Each annual report shall include photographs taken from fixed locations identified in the EPA-approved Final Restoration Work Plan. Each annual monitoring report shall also include a written narrative that

In the Matter of: Robert Yundt Homes, LLC
Docket Number: CWA-10-2022-0007
Administrative Order on Consent
Page 10 of 17

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11 -C07
Seattle, Washington 98101

details the results of that year's monitoring activities, any maintenance actions conducted at the Site, and any adaptive management actions that were implemented, and deviations from the monitoring protocols identified in the EPA-approved Final Restoration Work Plan, and the current conditions at the Site. Each Annual Monitoring Report shall also describe any potential problems observed and recommended changes to the monitoring protocols or performance standards, which shall be included in the EPA-approved Final Restoration Work Plan. EPA may request a Site visit to verify the annual progress of the restoration activities consistent with the EPA-approved Final Restoration Work Plan and Order.

5.8    Site Access: Until termination of this Order, Respondent shall, commencing on the Effective Date, provide or otherwise obtain for EPA, reasonable access to the areas of the Site owned by Respondent. Respondent shall provide access to all records and documentation reasonably related to the conditions at the Site and the restoration activities conducted pursuant to this Order. Such access shall be provided to EPA employees and its designated representatives. These individuals shall be permitted to move freely at the Site so long as they do not unreasonably interfere with any of Respondent's activities at the Site.

## VI.    DOCUMENTATION AND SUBMISSIONS

6.1.    All reports, notifications, documentation, submissions, and other correspondence required to be submitted by this Order shall be submitted to EPA electronically, to the extent possible. Electronic submissions shall be sent to the following email addresses: jen.mark@epa.gov; johnson.patrick@epa.gov; and R10enforcement@epa.gov. The subject line of all email correspondence shall include the Site name, subject of the deliverable, and the docket number of this Order. All electronically-submitted materials shall be in final and searchable format, such as Portable Document Format (PDF) with Optical Character Recognition

In the Matter of: Robert Yundt Homes, LLC
Docket Number: CWA-10-2022-0007
Administrative Order on Consent
Page 11 of 17

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington 98101

(OCR) applied. If electronic submittal is not possible, then submissions shall be made by certified mail with a return receipt requested. Certified mailed submissions shall be addressed to the following EPA representatives:

Attn: Mark Jen, Inspector/Case Officer
U.S. Environmental Protection Agency
Region 10, Alaska Operations Office
222 West Seventh Avenue, No. 19
Anchorage, Alaska 99513

Attn: Patrick Johnson, Attorney
U.S. Environmental Protection Agency
Region 10, Alaska Operations Office
222 West Seventh Avenue, No. 19
Anchorage, Alaska 99513

6.2.    All reports, notifications, documentation, and submissions required by this Order shall be signed by a duly authorized representative(s) of Respondent and shall include the following statement:

"I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

6.3.    Confidential Business Information: Respondent may not withhold information based on a claim that it is confidential. However, pursuant to 40 C.F.R. Part 2, Subpart B, Respondent may assert a claim of business confidentiality regarding any portion of the information submitted in response to this Order. The manner of asserting such claims is specified in 40 C.F.R. § 2.203(b). Information subject to a business confidentiality claim is available to the public only to the extent, and by means of the procedures, set forth in 40 C.F.R. Part 2, Subpart B. If Respondent does not assert a claim of business confidentiality when it submits the information, EPA may make the information available to the public without further notice. 40 C.F.R. § 2.203(c).

In the Matter of: Robert Yundt Homes, LLC
Docket Number: CWA-10-2022-0007
Administrative Order on Consent
Page 12 of 17

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington 98101

Case 3:23-cv-00073-JMK    Document 14    Filed 09/26/23    Page 57 of 111

6.4.    If Respondent finds at any time after submitting information that any portion of that information is false or incorrect, the signatory shall notify EPA immediately.  Knowingly submitting false information to EPA in response to this Order may subject Respondent to criminal prosecution under Section 309(c) of the CWA, 33 U.S.C. § 1319(c), as well as 18 U.S.C. § 1001 and 1341.

6.5.    Submissions by Respondent are incorporated and enforceable as part of this Order.  In case of inconsistency between any submission by Respondent and this Order and its subsequent modifications, this Order and its subsequent modifications shall control.

6.6.    EPA may use any information submitted in response to this Order in support of an administrative, civil, or criminal action against Respondent.

6.7.    The information required to be submitted pursuant to this Order is not subject to the approval requirements of the Paperwork Reduction Act of 1995, 44 U.S.C. § 3501 *et seq.*

6.8.    Record Preservation: Respondent shall preserve and retain, and shall instruct its consultant, contractor, and other persons acting on their behalf in connection with this Order, to preserve and retain all records and documents relating in any manner to this Order until EPA has issued a written notice pursuant to Section 12.3.  If EPA asks Respondent for any copies of any records or documents related to the activities conducted pursuant to this Order, Respondent shall, at no cost to EPA, provide EPA the original or copies of the records or documents within thirty (30) days of EPA's request.

## VII.    GENERAL PROVISIONS

7.1.    Respondent has had the opportunity to confer with and submit information to EPA concerning the validity and provisions of this Order.

In the Matter of:  Robert Yundt Homes, LLC
Docket Number:  CWA-10-2022-0007
Administrative Order on Consent
Page 13 of 17

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington  98101

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 58 of 111

7.2.    This Order does not affect Respondent's responsibility to comply with the CWA and other local, state, and federal laws and regulations.

7.3.    The undersigned signatory for each party has the authority to bind each respective party to the terms and conditions of this Order.

7.4.    Respondent agrees to accept service of this Order by electronic mail to ryh.accts@gmail.com.

7.5.    This Order shall be binding on Respondent and their agents, employees, successors, and assigns, and on all persons, contractors, and consultants acting in concert with or under the direction of Respondent or of this Order.

7.6.    Respondent shall provide a copy of this Order to all contractors and/or consultants retained to perform any of the work described in this Order at least forty-eight (48) hours prior to the initiation of such work.

7.7.    Until such time as all tasks required under this Order are completed, Respondent shall provide a copy of this Order to any successor in ownership, control, or operation in all or any portion of the real property at issue at least thirty (30) days prior to the transfer and shall simultaneously notify EPA in writing that such notice has been given.  No transfer or contract shall in any way affect Respondent's obligation to comply fully with all the terms and conditions of this Order.

7.8.    This Order does not restrict EPA's authority to enforce any section of the CWA or its implementing regulations.

7.9.    For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 1.162-21(h)(2),

In the Matter of:  Robert Yundt Homes, LLC
Docket Number:  CWA-10-2022-0007
Administrative Order on Consent
Page 14 of 17

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington  98101

performance of Paragraphs 5.1 – 6.8 are restitution, remediation, or required to come into compliance with the law.

## VIII.  SANCTIONS

8.1.    Failure to Comply: Failure to comply with the terms of this Order may subject Respondent to civil penalties under Section 309(d), 33 U.S.C. § 1319(d), as modified by 40 C.F.R. Part 19.  Should EPA commence an action seeking penalties for violations of this Order, a United States district court has the authority, after notice and opportunity for a hearing, to impose separate civil penalties for violations of the CWA as well as for violations of this Order.

## IX.    MODIFICATION OF ORDER

9.1.    The deadlines set forth in this Order may be modified upon written approval by EPA.  Any other modification of this Order shall be by agreement of all Parties and in writing and shall not take effect until the written agreement is signed by all Parties.

## X.    JUDICIAL REVIEW

10.1.    Respondent waives any and all remedies, claims for relief, and otherwise available rights to judicial or administrative review that Respondent may have with respect to any issue of fact or law set forth in this Order, including, but not limited to, any right of judicial review of this Order under the Administrative Procedure Act, 5 U.S.C. §§ 701-708.

## XI.    EFFECTIVE DATE

11.1.    This Order shall become effective upon receipt by Respondent and will remain in effect until Respondent has demonstrated compliance and EPA has notified Respondent pursuant to Section XII, below.

## XII.    FINAL REPORT,  INSPECTION, AND TERMINATION

12.1.    EPA may terminate this Order at any time by written notice to Respondent.

In the Matter of:  Robert Yundt Homes, LLC
Docket Number:  CWA-10-2022-0007
Administrative Order on Consent
Page 15 of 17

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington  98101

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 60 of 111

12.2.    Final Report and Certification: Absent the notice described in Paragraph 12.1 and within thirty (30) days after Respondent concludes that it has complied with all requirements of the EPA-approved Final Restoration Work Plan this Order, Respondent shall submit to the EPA representatives in Paragraph 6.1 a written Final Report and Certification of Completion describing all actions taken to comply with all requirements of this Order.  Respondent shall follow the procedures set forth in Section VI of this Order.

12.3.    Site Inspection: After receipt and review of Respondent's Final Report and Certification of Completion submitted pursuant to Paragraph 12.2, EPA will require a Site Inspection to confirm compliance with all requirements of the EPA-approved Final Restoration Work Plan and this Order

12.4.    Corrective Actions: No later than fifteen (15) days after the Site Inspection pursuant to Paragraph 12.3, EPA will notify Respondent whether it has satisfied all requirements of EPA-approved Final Restoration Work Plan and this Order under the procedures set forth in Section VI of this Order.  If EPA concludes that Respondent has failed to satisfy the requirements of the EPA-approved Final Restoration Work Plan and this Order, EPA may require further Corrective Actions as set forth under this Order or it may pursue administrative or civil judicial actions.

12.5.    Termination: If EPA concludes that Respondent has satisfied the requirements of the EPA-approved Final Restoration Work Plan and this Order, a Letter of Termination to administratively close this Order will be provided as written notification to Respondent.

In the Matter of:  Robert Yundt Homes, LLC
Docket Number:  CWA-10-2022-0007
Administrative Order on Consent
Page 16 of 17

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington 98101

STIPULATED and AGREED this 29 day of October, 2021:

_____

Robert Yundt, II, Manager
Robert Yundt Homes, LLC

It is so ORDERED and AGREED this ____ day of _____, 2021:

EDWARD
KOWALSKI
Digitally signed by
EDWARD KOWALSKI
Date: 2021.11.02
11:51:23 -07'00'

_____

Edward J. Kowalski, Director
Enforcement and Compliance Assurance Division
EPA Region 10

In the Matter of:  Robert Yundt Homes, LLC
Docket Number:  CWA-10-2022-0007
Administrative Order on Consent
Page 17 of 17

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington  98101

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 62 of 111

Appendix B

BEFORE THE
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

In the Matter of:

ROBERT YUNDT HOMES, LLC,

Cottonwood Lake - Wasilla, Alaska,

Respondent.

DOCKET NO. CWA-10-2022-0006

**ADMINISTRATIVE ORDER ON CONSENT**

## I.    **INTRODUCTION**

1.1.    The U.S. Environmental Protection Agency ("EPA") makes the findings set forth in Section IV below and is issuing this Administrative Order on Consent ("Order") to Robert Yundt Homes, LLC ("Respondent") under the authorities in Sections 308 and 309(a) of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1318 and 1319(a).

1.2.    This Order is mutually entered into by EPA and Respondent.

1.3.    EPA alleges that Respondent violated Section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging dredged and/or fill material into the navigable waters from a point source without authorization by a Department of Army permit issued by the U.S. Army Corps of Engineers ("Corps") pursuant to Section 404 of the CWA, 33 U.S.C. § 1344.

1.4.    By entering into this Order, Respondent (1) consents to EPA's authority to issue and enforce this Order; (2) neither admits nor denies the factual allegations as set forth in this Order; (3) agrees to undertake all actions required by the terms and conditions of this Order; (4) consents to be bound by the requirements set forth herein; and (5) agrees not to contest the authority of EPA to issue or enforce this Order or the validity of any terms or conditions in this Order.

## II.     STATUTORY AUTHORITY

2.1.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant by any person except, *inter alia*, as authorized by a permit issued by the Corps pursuant to Section 404 of the CWA, 33 U.S.C. § 1344.

2.2.     Section 309(a) of the CWA, 33 U.S.C. § 1319(a), provides that whenever EPA finds that any person is in violation of any condition or limitation that implements, *inter alia*, Sections 301(a) and 404 of the CWA, 33 U.S.C. §§ 1311(a) and 1344, EPA shall issue an order requiring such person to comply with such condition or limitation, and shall specify a time for compliance that EPA determines to be reasonable taking into account the seriousness of the violation and any good faith efforts to comply with applicable requirements.

2.3.     Section 308(a) of the CWA, 33 U.S.C. § 1318(a), authorizes EPA to require the submission of any information required to carry out the objectives of the CWA.

2.4.     The authorities in Sections 308 and 309(a), 33 U.S.C. §§ 1318 and 1319(a), have been delegated to the Regional Administrator for EPA Region 10 and have been redelegated to the Region 10 Director of the Enforcement and Compliance Assurance Division ("Director").

## III.     DEFINITIONS

3.1.     All terms used, but not defined, in this Order have the meanings provided to them in the CWA, 33 U.S.C. § 1251 *et seq.*, and the EPA regulations promulgated under the CWA.

3.2.     "Act" or "CWA" means the Clean Water Act, 33 U.S.C. § 1251 *et seq.*

3.3.     "Day" or "days" means a calendar day or calendar days unless expressly stated to be a business day. When computing any period of time under this Order, should the last day fall

In the Matter of:  Robert Yundt Homes, LLC
Docket Number:  CWA-10-2022-0006
Administrative Order on Consent
Page 2 of 18

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington  98101

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 65 of 111

on a Saturday, Sunday, or federal holiday, the period shall run until the end of the next business day.

3.4. "Discharge of a pollutant," as defined in Section 502(12) of the CWA, means *inter alia*, "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

3.5. "Discharge of dredged material," as defined in 40 C.F.R. § 232.2, means *inter alia*, "any addition of dredged material into, including redeposit of dredged material other than incidental fallback within, the waters of the United States."

3.6. "Discharge of fill material," as defined in 40 C.F.R. § 232.2, means *inter alia*, "the addition of fill material into waters of the United States."

3.7. "Dredged material," as defined in 40 C.F.R. § 232.2, means "material that is excavated or dredged from waters of the United States."

3.8. "Site" means the residential subdivision lots located at 5560 East Cherry Circle, also known as Lot 24A, and 5530 East Cherry Circle, also known as Lot 6A, adjacent to Cottonwood Lake in Wasilla, Alaska within Section 32, Township 18 North, Range 1 East, Seward Meridian.

3.9. "Fill material," defined in 40 C.F.R. § 232.2, means *inter alia*, "material placed in waters of the United States where the material has the effect of: (i) replacing any portion of a water of the United States with dry land; or (ii) changing the bottom elevation of any portion of a water of the United States."

3.10. "Navigable waters," as defined in Section 502(7) of the CWA, means "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). In turn, "waters of the United States" is defined to include, *inter alia*, all waters which are currently used, were used in

In the Matter of: Robert Yundt Homes, LLC
Docket Number: CWA-10-2022-0006
Administrative Order on Consent
Page 3 of 18

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington 98101

the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide; tributaries to such waters; and wetlands adjacent to the foregoing waters. 40 C.F.R. § 120.2; 40 C.F.R. 230(s) (1993).

3.11. "Parties" means EPA and Respondent.

3.12. "Person," as defined in Section 502(5) of the CWA, means an "individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body." 33 U.S.C. § 1362(5).

3.13. "Point source," as defined in Section 502(14) of the CWA, means "any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

3.14. "Pollutant," as defined in Section 502(6) of the CWA, means "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt, and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6).

## IV. FINDINGS OF FACT AND LAW

4.1. Respondent is a limited liability company licensed to conduct business in the State of Alaska and is therefore a "person" as defined by CWA Section 502(5), 33 U.S.C. § 1362(5).

4.2. At times relevant to this Order, Respondent owned, possessed, or controlled the Site, identified in Exhibit A of this Order.

In the Matter of: Robert Yundt Homes, LLC
Docket Number: CWA-10-2022-0006
Administrative Order on Consent
Page 4 of 18

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington 98101

4.3. The Site contains wetlands that are adjacent to Cottonwood Lake, a relatively permanent water. Cottonwood Lake has a continuous surface water connection to Cottonwood Creek, a perennial tributary with a continuous surface water connection to Wasilla Lake. Wasilla Lake, a relatively permanent water, has a continuous surface water connection to Cottonwood Creek, a perennial tributary with a continuous surface water connection to the Knik Arm of Cook Inlet. The Knik Arm of Cook Inlet is subject to the ebb and flow of the tide, is a traditional navigable water, and is a therefore a water of the United States. As such, Cottonwood Lake and its adjacent wetlands are "navigable waters" within the meaning of CWA Section 502(7), 33 U.S.C. § 1362(7), and are "waters of the United States" within the meaning of 40 C.F.R. § 120.2 and 40 C.F.R. § 230.3(s) (1993).

4.4. Beginning on or around April 26, 2019, Respondent and/or persons acting on its behalf:

4.4.1 Used certain heavy earthmoving equipment, including an excavator and dump truck, to relocate and discharge gravel, native organic soil, woody debris, slash, and logs at the Site; and

4.4.2 Placed those materials into wetlands adjacent to Cottonwood Lake.

4.5. The purpose of Respondent's activities was to mechanically land clear and prepare the Site for residential development.

4.6. The equipment referenced in Paragraph 4.4.1 is a "point source" within the meaning of CWA Section 502(14), 33 U.S.C. § 1362(14).

In the Matter of: Robert Yundt Homes, LLC
Docket Number: CWA-10-2022-0006
Administrative Order on Consent
Page 5 of 18

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington 98101

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 68 of 111

4.7.    The dredged and/or fill materials that Respondent and/or persons acting on its behalf caused to be discharged, as referenced in Paragraph 4.4.1, included gravel, native organic soil, woody debris, slash, and logs, each of which constitutes "dredged material" and/or "fill material" within the meaning of 40 C.F.R. § 232.2, and each of which constitutes a "pollutant" within the meaning of CWA Section 502(6), 33 U.S.C. § 1362(6).

4.8.    By causing such dredged and/or fill materials to enter waters of the United States, Respondent engaged in the "discharge of pollutants" from a point source within the meaning of CWA Sections 301(a) and 502(12), 33 U.S.C. §§ 1311(a) and 1362(12).

4.9.    Because Respondent owned the Site that resulted in the discharge of pollutants from a point source into navigable waters, Respondent and the Site are subject to the CWA at all times relevant to this Order. Thus, any such discharge has been and is subject to the CWA.

4.10.    During all times relevant to this Order, Respondent did not apply for a Corps permit under Section 404 of the CWA, 33 U.S.C. § 1344.

4.11.    Respondent is a person who discharged pollutant(s) from point source(s) into navigable waters, without a permit under Section 404 of the CWA, 33 U.S.C. § 1344. Accordingly, each instance in which Respondent discharged pollutant(s) to navigable waters, is a violation of Section 301 of the CWA, 33 U.S.C. § 1311.

4.12.    Each day that the dredged and/or fill material remains in place without the required permit constitutes a violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

4.13.    Taking into account the seriousness of these violations and any good faith efforts to comply with applicable requirements, the parties acknowledge and agree that the schedule for compliance contained in Section V of this Order is reasonable and appropriate.

In the Matter of:  Robert Yundt Homes, LLC
Docket Number:  CWA-10-2022-0006
Administrative Order on Consent
Page 6 of 18

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington  98101

## V.    COMPLIANCE MEASURES

Based upon the foregoing findings and the authority granted to the undersigned Director, it is hereby ordered and agreed to in accordance with Sections 308 and 309(a) of the CWA, 33 U.S.C. §§ 1318 and 1319(a), that Respondent comply with the following actions:

5.1    <u>Prohibition of Discharge</u>: Respondent shall not discharge any additional pollutants into any waters of the United States at the Site except in compliance with this Order or a permit issued pursuant to the CWA.

5.2    <u>Submission of Restoration Work Plan</u>: No later than forty-five (45) days after the effective date of this Order, Respondent and/or persons acting on its behalf shall submit a Restoration Work Plan to EPA for review and approval.  At a minimum, the Restoration Work Plan shall include the following:

5.2.1    A description of the removal of gravel, native organic soil, and/or other fill material that was discharged into wetlands adjacent to Cottonwood Lake within Lot 24A located at 5560 East Cherry Circle in Wasilla ("Lot 24A") associated with the construction of a single-family home basement foundation and removal of certain gravel, native organic soil, and/or other fill material that is not critical to the mounded septic system infrastructure;

5.2.2    A description of the new upland location for the gravel, native organic soil, and/or other fill material removed from wetlands adjacent to Cottonwood Lake within Lot 24A;

5.2.3    A surveyed map depicting: (1) the current and future location of all gravel, native organic soils, and/or other fill material in wetlands; (2) the jurisdictional wetland boundary identified by the Corps; and (3) the fixed

In the Matter of:  Robert Yundt Homes, LLC
Docket Number:  CWA-10-2022-0006
Administrative Order on Consent
Page 7 of 18

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington  98101

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 70 of 111

locations where photographs will be taken for the Completion Report and subsequent Annual Monitoring Reports.

5.2.4 A description of how all restoration work will be completed, including: (1) dates certain by which activities will commence; (2) a list of any heavy earthmoving equipment to be used and/or other equipment that will be employed to minimize wetland impacts; and (3) the name(s) and contact information for the person(s) and/or contractor(s), if any, that will complete the work under this Restoration Work Plan and this Order;

5.2.5 A list of the best management practices (BMPs) (including silt fences, silt curtains, work practices, etc.) Respondent will employ during the restoration activities to minimize to the maximum extent practicable: (1) the discharge of sediment and other pollutants to waters of the United States, including wetlands; and (2) soil compaction and damage to existing vegetation;

5.2.6 A description of how Respondent will comply with all requirements of any local, state, and/or federal authorizations and/or permits that will be necessary to complete the restoration work, including, but not limited to, under CWA Section 401, CWA Section 402, CWA Section 404, City of Wasilla and Matanuska-Susitna Borough laws, codes, and ordinances, and/or Alaska state law and codes;

In the Matter of: Robert Yundt Homes, LLC
Docket Number: CWA-10-2022-0006
Administrative Order on Consent
Page 8 of 18

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington 98101

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 71 of 111

5.2.7   A Revegetation Plan for Lot 24A that prioritizes native, hydrophytic vegetation commonly found in healthy riparian lake wetland systems in south-central Alaska. This Plan should consider spreading the areas where fill material is to be removed with native organic soils that provide a seed source. The performance standard will require natural revegetation during the subsequent three years after restoration activities to achieve a 75% vegetation cover. If this performance standard is not achieved after three years of annual monitoring, EPA will require implementation of additional corrective measures, such as active vegetation planting at the Site;

5.2.8   A Three-Year Monitoring Plan describing the photographic monitoring and documentation for the restoration measures, including specific vegetation performance standards, at Lot 24A;

5.2.9   A Contingency Plan identifying the corrective actions Respondent will take in the event the performance standards for vegetation are not achieved at the Site.

5.3     Approval by EPA: The Restoration Work Plan shall be submitted to EPA representatives identified in Paragraph 6.1 for review and approval prior to commencement of restoration work at the Site. Upon receipt of the Restoration Work Plan, EPA will, within a reasonable time, review and approve the Restoration Work Plan or submit a request for additional information and/or request a Site visit. Respondent shall respond to an initial request for additional information within thirty (30) days. EPA will review the response to the request for additional information within a reasonable time.

In the Matter of: Robert Yundt Homes, LLC
Docket Number: CWA-10-2022-0006
Administrative Order on Consent
Page 9 of 18

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington 98101

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 72 of 111

5.4     Notification to EPA: At least seven (7) days prior to commencing activities at the Site under the EPA-approved Final Restoration Work Plan, Respondent shall notify the EPA representatives identified in Paragraph 6.1.

5.5     Implementation: Respondent shall complete the activities required by the EPA-approved Restoration Work Plan, other than the annual monitoring requirements, no later than July 31, 2022.

5.6     Completion Report. Within thirty (30) days of completing the restoration activities described in the EPA-approved Final Restoration Work Plan, Respondent shall provide the EPA representatives identified in Paragraph 6.1 with a Completion Report, which shall include photographs of the Site conditions before and after compliance with this Order and implementation of the EPA-approved Final Restoration Work Plan. The photographs shall be taken from fixed locations identified in the EPA-approved Final Restoration Work Plan and include a description. EPA will review and approve the Completion Report within a reasonable time, not to exceed thirty (30) days from receipt of Respondent's written notification. EPA may request a Site visit to verify the completion of restoration activities consistent with the EPA-approved Final Restoration Work Plan and this Order.

5.7     Annual Monitoring Reports. On or before the first, second, and third anniversaries of EPA's approval of the Completion Report, Respondent shall submit an annual monitoring report to the EPA representatives identified in Paragraph 6.1. Each annual report shall include photographs taken from fixed locations identified in the EPA-approved Final Restoration Work Plan. Each annual monitoring report shall also include a written narrative that details the results of that year's monitoring activities, any maintenance actions conducted at the Site, and any adaptive management actions that were implemented, and deviations from the

In the Matter of:  Robert Yundt Homes, LLC
Docket Number:  CWA-10-2022-0006
Administrative Order on Consent
Page 10 of 18

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington  98101

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 73 of 111

monitoring protocols identified in the EPA-approved Final Restoration Work Plan, and the current conditions at the Site. Each Annual Monitoring Report shall also describe any potential problems observed and recommended changes to the monitoring protocols or performance standards, which shall be included in the EPA-approved Final Restoration Work Plan. EPA may request a Site visit to verify the annual progress of the restoration activities consistent with the EPA-approved Final Restoration Work Plan and this Order.

    5.8    <u>Site Access</u>: Until termination of this Order, Respondent shall, commencing on the Effective Date, provide or otherwise obtain for EPA, reasonable access to the areas of the Site owned by Respondent and exert its best efforts to obtain reasonable access to any off-site areas to which access is necessary to implement this Order. Respondent shall provide access to all records and documentation reasonably related to the conditions at the Site and the restoration activities conducted pursuant to this Order. Such access shall be provided to EPA employees and its designated representatives. These individuals shall be permitted to move freely at the Site, and, if access is granted thereto, appropriate off-site areas in order to conduct actions which the EPA determines to be necessary, so long as they do not unreasonably interfere with any of Respondent's activities at the Site.

    5.9    <u>Environmental Covenant:</u> As compensatory mitigation for allowing certain unauthorized fill material to remain in wetlands on Lot 6A and Lot 24A, Respondent shall ensure that certain portions of Lot 24A remain undisturbed in its natural condition, except for certain allowable activities and uses, in perpetuity. No later than thirty (30) days after EPA reviews and approves the Completion Report as required by Paragraph 5.6, Respondent shall, at its own cost and expense, contract to have a professionally-licensed survey performed to delineate the applicable portion of property on Lot 24A to remain undisturbed in perpetuity, which shall

In the Matter of: Robert Yundt Homes, LLC
Docket Number: CWA-10-2022-0006
Administrative Order on Consent
Page 11 of 18

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington 98101

include that area within the wetland line waterward toward the shoreline of Cottonwood Lake as designated on Exhibit C to the Declaration of Environmental (Restrictive) Covenant, appended hereto as Appendix A and incorporated herein by reference, other than those wetlands within which fill material will remain to maintain the mounded septic system infrastructure. No later than ten (10) days after receiving the professionally licensed survey report, Respondent shall provide EPA with a copy of the professionally licensed survey report for EPA's review and approval. No later than ten (10) days after receiving EPA's approval of the professionally licensed survey report, Respondent shall finalize and execute the Declaration of Environmental (Restrictive) Covenant and send to EPA for full execution. Within ten (10) days of receiving the fully executed Declaration of Environmental (Restrictive) Covenant from EPA, Respondent shall record a certified copy of this Order and the fully executed Declaration of Environmental (Restrictive) Covenant with the Palmer Recording District of the State of Alaska Department of Natural Resources Recorder's Office in Anchorage, Alaska. Thereafter, each deed, title, or other instrument conveying an interest in Lot 24A shall contain a notice stating that the property is subject to the Declaration of Environmental (Restrictive) Covenant and shall reference the recorded location of the Declaration of Environmental (Restrictive) Covenant.

## VI. DOCUMENTATION AND SUBMISSIONS

6.1.  All reports, notifications, documentation, submissions, and other correspondence required to be submitted by this Order shall be submitted to EPA electronically, to the extent possible. Electronic submissions shall be sent to the following email addresses: jen.mark@epa.gov; johnson.patrick@epa.gov; and R10enforcement@epa.gov;. The subject line of all email correspondence shall include the Site name, subject of the deliverable, and the docket number of this Order. All electronically-submitted materials shall be in final and

In the Matter of: Robert Yundt Homes, LLC
Docket Number: CWA-10-2022-0006
Administrative Order on Consent
Page 12 of 18

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington 98101

searchable format, such as Portable Document Format (PDF) with Optical Character Recognition (OCR) applied. If electronic submittal is not possible, then submissions shall be made by certified mail with a return receipt requested. Certified mail submissions shall be addressed to the following EPA representatives:

Attn: Mark Jen, Inspector/Case Officer
U.S. Environmental Protection Agency
Region 10, Alaska Operations Office
222 West Seventh Avenue, No. 19
Anchorage, Alaska 99513

Attn: Patrick Johnson, Attorney
U.S. Environmental Protection Agency
Region 10, Alaska Operations Office
222 West Seventh Avenue, No. 19
Anchorage, Alaska 99513

6.2. All reports, notifications, documentation, and submissions required by this Order shall be signed by a duly authorized representative(s) of Respondent and shall include the following statement:

"I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

6.3. <u>Confidential Business Information</u>: Respondent may not withhold information based on a claim that it is confidential. However, pursuant to 40 C.F.R. Part 2, Subpart B, Respondent may assert a claim of business confidentiality regarding any portion of the information submitted in response to this Order. The manner of asserting such claims is specified in 40 C.F.R. § 2.203(b). Information subject to a business confidentiality claim is available to the public only to the extent, and by means of the procedures, set forth in 40 C.F.R. Part 2, Subpart B. If Respondent does not assert a claim of business confidentiality when it

In the Matter of: Robert Yundt Homes, LLC
Docket Number: CWA-10-2022-0006
Administrative Order on Consent
Page 13 of 18

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington 98101

submits the information, EPA may make the information available to the public without further notice. 40 C.F.R. § 2.203(c).

6.4. If Respondent finds at any time after submitting information that any portion of that information is false or incorrect, the signatory shall notify EPA immediately. Knowingly submitting false information to EPA in response to this Order may subject Respondent to criminal prosecution under Section 309(c) of the CWA, 33 U.S.C. § 1319(c), as well as 18 U.S.C. § 1001 and 1341.

6.5. Submissions by Respondent are incorporated and enforceable as part of this Order. In case of inconsistency between any submission by Respondent and this Order and its subsequent modifications, this Order and its subsequent modifications shall control.

6.6. EPA may use any information submitted in response to this Order in support of an administrative, civil, or criminal action against Respondent.

6.7. The information required to be submitted pursuant to this Order is not subject to the approval requirements of the Paperwork Reduction Act of 1995, 44 U.S.C. § 3501 *et seq.*

6.8. Record Preservation: Respondent shall preserve and retain, and shall instruct its consultant, contractor, and other persons acting on their behalf in connection with this Order, to preserve and retain all records and documents relating in any manner to this Order until EPA has issued a written notice pursuant to Section 12.3. If EPA asks Respondent for any copies of any records or documents related to the activities conducted pursuant to this Order, Respondent shall, at no cost to EPA, provide EPA the original or copies of the records or documents within thirty (30) days of EPA's request.

## VII. GENERAL PROVISIONS

7.1. Respondent has had the opportunity to confer with and submit information to EPA concerning the validity and provisions of this Order.

In the Matter of: Robert Yundt Homes, LLC
Docket Number: CWA-10-2022-0006
Administrative Order on Consent
Page 14 of 18

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington 98101

7.2.    This Order does not affect Respondent's responsibility to comply with the CWA and other local, state, and federal laws and regulations.

7.3.    The undersigned signatory for each party has the authority to bind each respective party to the terms and conditions of this Order.

7.4.    Respondent agrees to accept service of the Order by electronic mail to ryh.accts@gmail.com.

7.5.    This Order shall be binding on Respondent and their agents, employees, successors, and assigns, and on all persons, contractors, and consultants acting in concert with or under the direction of Respondent or of this Order.

7.6.    Respondent shall provide a copy of this Order to all contractors and/or consultants retained to perform any of the work described in this Order at least 48 hours prior to the initiation of such work.

7.7.    Until such time as all tasks required under this Order are completed, Respondent shall provide a copy of this Order to any successor in ownership, control, or operation in all or any portion of the real property at issue at least thirty (30) days prior to the transfer and shall simultaneously notify EPA in writing that such notice has been given. No transfer or contract shall in any way affect Respondent's obligation to comply fully with all the terms and conditions of this Order.

7.8.    This Order does not restrict EPA's authority to enforce any section of the CWA or its implementing regulations.

7.9.    For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 1.162-21, performance of

In the Matter of:  Robert Yundt Homes, LLC
Docket Number:  CWA-10-2022-0006
Administrative Order on Consent
Page 15 of 18

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington  98101

Paragraphs 5.1 – 6.8 are restitution, remediation, or required to come into compliance with the law.

## VIII.  SANCTIONS

8.1.    Failure to Comply:  Failure to comply with the terms of this Order may subject Respondent to civil penalties under Section 309(d), 33 U.S.C. § 1319(d), as modified by 40 C.F.R. Part 19.  Should EPA commence an action seeking penalties for violations of this Order, a United States district court has the authority, after notice and opportunity for a hearing, to impose separate civil penalties for violations of the CWA as well as for violations of this Order.

## IX.    MODIFICATION OF ORDER

9.1.    The deadlines set forth in this Order may be modified upon written approval by EPA. Any other modification of this Order shall be by agreement of all Parties and in writing and shall not take effect until the written agreement is signed by all Parties.

## X.    JUDICIAL REVIEW

10.1.    Respondent waives any and all remedies, claims for relief, and otherwise available rights to judicial or administrative review that Respondent may have with respect to any issue of fact or law set forth in this Order, including, but not limited to, any right of judicial review of this Order under the Administrative Procedure Act, 5 U.S.C. §§ 701-708.

## XI.    EFFECTIVE DATE

11.1.    This Order shall become effective upon receipt by Respondent and will remain in effect until Respondent has demonstrated compliance and EPA has notified Respondent pursuant to Section XII, below.

## XII.    FINAL REPORT, INSPECTION, AND TERMINATION

12.1.    EPA may terminate this Order at any time by written notice to Respondent.

In the Matter of:  Robert Yundt Homes, LLC
Docket Number:  CWA-10-2022-0006
Administrative Order on Consent
Page 16 of 18

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington  98101

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 79 of 111

12.2.   Final Report and Certification:  Absent the notice described in Paragraph 12.1 and within thirty (30) days after Respondent concludes that it has complied with all requirements of the EPA-approved Final Restoration Work Plan and this Order, Respondent shall submit to the EPA representatives identified in Paragraph 6.1 a written Final Report and Certification of completion describing all actions taken to comply with all requirements of this Order. Respondent shall follow the procedures set forth in Section VI of this Order.

12.3.   Site Inspection:  After receipt and review of Respondent's Final Report and Certification of completion submitted pursuant to Paragraph 12.2, EPA will require a Site inspection to confirm compliance with all requirements of the EPA-approved Final Restoration Work Plan and this Order.

12.4.   Corrective Actions:  No later than fifteen (15) days after the Site Inspection pursuant to Paragraph 12.3, EPA will notify Respondent whether it has satisfied all requirements of the EPA-approved Final Restoration Work Plan and this Order under the procedures set forth in Section VI of this Order.  If EPA concludes that Respondent has failed to satisfy the requirements of the EPA-approved Final Restoration Work Plan and this Order, EPA may require further Corrective Actions as set forth under this Order or it may pursue administrative or civil judicial actions.

12.5.   Termination:  If EPA concludes that Respondent has satisfied the requirements of the EPA-approved Final Restoration Work Plan and this Order, a Letter of Termination to administratively close out this Order will be provided as written notification to Respondent.

In the Matter of:  Robert Yundt Homes, LLC
Docket Number:  CWA-10-2022-0006
Administrative Order on Consent
Page 17 of 18

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington  98101

STIPULATED and AGREED this _29_ day of _October_, 2021:

_[signature]_

Robert Yundt, II, Manager
Robert Yundt Homes, LLC

It is so ORDERED and AGREED this _____ day of _____, 2021:

EDWARD
KOWALSKI

Digitally signed by
EDWARD KOWALSKI
Date: 2021.11.02
11:55:27 -07'00'

Edward J. Kowalski, Director
**Enforcement and Compliance Assurance Division**
EPA Region 10

In the Matter of: Robert Yundt Homes, LLC
Docket Number: CWA-10-2022-0006
Administrative Order on Consent
**Page 18 of 18**

U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 155, 11-C07
Seattle, Washington 98101

Case 3:23-cv-00073-JMK   Document 14   Filed 09/26/23   Page 81 of 111

# Appendix C

**Restoration Work Plan**

CWA-10-2022-0007

**For the Westpoint Site on Wasilla Lake**
**1165 Westpoint Drive**
**Wasilla, Alaska**


**Submitted by Robert Yundt Homes**
**On February 27, 2023**

1

**Restoration Work Plan**

This restoration plan includes removal of unpermitted fill within Wasilla Lake and reconstruction of bank utilizing bank revegetation techniques detailed in the Alaska Department of Fish and Game's (ADF&G) 2005 Streambank Revegetation and Protection: A Guide For Alaska. Work will be completed per the attached plans and the following narrative:

1. **Permitting:**
   On behalf of Robert Yundt Homes (RYH), The Boutet Company, Inc. (TBC) will submit this work plan along with additional supporting documents to obtain necessary permits to work within the Ordinary Highwater Mark (OHWM) and jurisdictional wetlands of Wasilla Lake and complete the restoration work. Anticipated permits include:

   a. United States Army Corps of Engineers (USACE) Section 404 permit.
   b. Alaska Department of Fish and Game (ADF&G) Fish Habitat Permit
   c. City of Wasilla Land Use Permit – This permit was required for building construction and has been obtained by the Owner. This restoration work plan and bank reconstruction will satisfy the conditions of this permit.

   Permitting Schedule:
   | | |
   |---|---|
   | ADF&G Fish Habitat Submittal | March 1, 2023 |
   | USACE Wetland Fill Permit Submittal | March 1, 2023 |
   | Response to Comments, as needed: | April 1, 2023 |
   | Receive Permits: | May 1, 2023 |

   Note: This project is within Wasilla City Limits there for Wasilla City Code takes precedence over Matanuska-Susitna Borough (MSB) Code. No MSB Permits are required.

2. **Fill Removal Plan**
   Fill to be removed from the project includes riprap placed along the water's edge and topsoil placed from the water's edge to the edge of jurisdictional wetlands staked by USACE. The new bank will be constructed along the delineated edge of lake shown in Figure 1.

   Robert Yundt Homes will self-perform this work with oversite and guidance form TBC to remove approximately 50 cubic yards (CY) of rip rap from the edge of the lake and approximately 18 CY of fill from the wetland fringe area, between the staked flagging shoreward to Wasilla Lake (Figure 1).

   Prior to earth disturbance, the project manager will stake the limit of jurisdictional wetland and edge of bank per the USCOE delineation. The Contractor will install a perimeter best management practice (BMP) along the water's edge, as discussed in Section 4 below, approximately 3' into the lake from the bank or as needed to surround the work area.

2

After installation of BMP's, the contractor will begin removal of unpermitted fill. Fill to be removed includes placed Riprap and approximately 4' width of bank along the water's edge to reconstruct the bank. The Contractor intends to use tracked equipment (i.e. skid steer and excavator) to remove rip rap and fill material. All removed fill material will be hauled offsite to be disposed in an upland area. Usable fill material (i.e. topsoil, rip rap) may be hauled to a different site for reuse for landscaping. All unusable material will be hauled to a local gravel pit for disposal.

A temporary stockpile location may be utilized during construction. If needed the stockpile location shall be located in an upland area surrounded by perimeter BMP's and covered when not in use. The dock will be removed until completion of the restoration work. Replacement of the dock shall be completed as required by the City of Wasilla, EPA, USACE and ADF&G. The gravel path will also be removed by from the lake edge to the edge of jurisdictional wetlands.

3. **Contractor/Project Manager Contacts and Equipment List**

   Contractor:
   > Robert Yundt
   > Robert Yundt Homes – (907) 373-7941

   Project Management/Coordination:
   > Tim Alley, PE
   > Project Manager
   > The Boutet Company, Inc.
   > (907) 357-6760

   > Trent Farris
   > On-site Representative/Project Inspector
   > The Boutet Company, Inc.
   > (907) 354-8212

   > Note: Project Manager may change staffing depending on availability. Any changes will be finalized before the preconstruction meeting and approved by EPA.

   Anticipated Equipment:
   > Skid steer loader on rubber tracks
   > Excavator (mini to midsize) on rubber tracks
   > Dump Truck

4. **Best Management Practices**

3

BMP's will be installed prior to earth disturbance per the attached details. A perimeter BMP will be installed approximately 3' into the lake from the bank. The BMP will be either silt fence or a silt curtain depending on water depth. The depth is less than 12" silt fence installed with stake and anchored with pea gravel along the inside (work side) of the silt fence. The perimeter BMP will help prevent migration of sediment into the lake.

After installation of the perimeter BMP, the contractor shall removal all trapped fish within the work area and release into the lake outside of the work limits. Contractor shall obtain a fish transport permit, as required, from ADF&G prior to preconstruction meeting.

After completion of the bank reconstruction, all remaining disturbed area will be seeded with hydraulically applied wetland revegetation seed mix and mulch. No fertilizer will be used in the in the hydroseed mix.

The perimeter BMP will remain installed and maintained until final stabilization of the bank reconstruction work has been achieved. Final stabilization is determined to be achieved with a minimum of 75% of the seeded area has grown to 1" height minimum.

5. **Revegetation Plan**

As stated above, the attached bank restoration and revegetation plans were developed utilizing ADF&G's Streambank Revegetation and Protection: A Guide For Alaska. This guide provides guidance for bank restoration work to mimic natural bank characteristics and promote fish habitat along the water's edge.

Bank reconstruction work will consist of a 18" coir log buried 12" along the delineated edge of bank. A layer of willow stakes, approximately 15 per linear foot (LF) will be placed along the bank in two courses. The first course will be installed atop the coir log followed by a 12" layer of soil/topsoil mix wrapped in coir fabric. Another course of willow stakes will be placed on the coir fabric followed by a 4" layer of topsoil and wetland seed stabilized with a rolled erosion control product (RECP) within 4' from the top of the reconstructed bank. (See attached details). Areas beyond 4' from the water's edge will be stabilized with 4" minimum thickness of locally sourced, weed free topsoil and hydraulically applied wetland revegetation seed mix at rate of 2.5lb/1000 sf. The following seed mix will be used:

| Wetland Seed Mix | | | |
|---|---|---|---|
| Name | Proportion by Weight | Purity | Germination |
| Red Fescue (Boreal) *Festuca rubra ruba* | 30% | 90% | 85% |
| 'Nortran' Tufted Hairgrass *Deschampsia Caespitosa* | 40% | 90% | 85% |

4

| | | | |
|---|---|---|---|
| Egan American Sloughgrass<br>*Beckmannia syzigachne 'Egan'* | 30% | 90% | 85% |

The reconstructed area will be watered daily until final stabilization is achieved.

Willow cuttings shall be collected while willows are still dormant, prior to March 31, 2023. Approximately, 1,315 cuttings will be needed for the project. Willow cuttings will be sourced from other RYH properties, as available or otherwise commercially sourced. Willow cuttings shall be kept frozen until planting. ADF&G will be consulted for proper harvesting and care until planting.

**6. Notification**

At least seven (7) days prior to commencing activities at the Site under the EPA-approved Final Restoration Work Plan, Respondent shall notify the EPA representatives identified in Paragraph 6.1 of the Administrative Order On Consent.

At least seven (7) days prior to completion of the work contractor or project manager shall notify EPA, ADF&G, USACE, and City of Wasilla to arrange a site visit with the contractor and project manager for a final acceptance inspection. The contractor shall remedy any deficiencies found during the site visit.

Attn: Mark Jen, Inspector/Case Officer
U.S. Environmental Protection Agency
Region 10, Alaska Operations Office
222 West Seventh Avenue, No. 19
Anchorage, Alaska 99513

Attn : Patrick Johnson, Attorney
U.S. Environmental Protection Agency
Region 10, Alaska Operations Office
222 West Seventh Avenue, No. 19
Anchorage, Alaska 99513

Attn: Shane McCoy, South Section Chief
US Army Corp of Engineers
Alaska District
2204 3rd Street
JBER, AK 99506-0898

**7. Completion Report**

Within 30-days of completing the restoration work, a Completion Report, which shall include photographs of the Site conditions before and after, will be submitted to EPA for review and approval.  The Completion Report shall include photographs taken from fixed locations shown on the attached plan and include a written narrative.

5

8. **Monitoring Plan**

   The site shall be monitored for the following 3 years after completion. The site will be inspected for establishment and viability of willows to ensure 75% growth and survivorship of dormant willow stakings along the restored shoreline of Wasilla Lake is maintained during the monitoring period.  Additional years of monitoring shall be required if the 75% performance standard has not been achieved after the three (3) years monitoring.

   Annual monitoring reports shall be submitted to EPA on or before the first, second, and third anniversaries of EPA's approval of the Completion Report.  Each annual monitoring report shall include photographs taken from fixed locations and shall include a written narrative that details the results of that year's monitoring activities, and maintenance actions conducted and any adaptive management actions implemented, and deviations from the monitoring protocols.  Each annual monitoring report shall also describe any potential problems observed and recommended changes to the monitoring protocols or performance standards.

9. **Contingency Plan**

   RYH will continue to monitor the performance of the reconstruction work for three years. Additional plantings/willow staking will be completed as needed to maintain a minimum 75% vegetation establishment.

10. **Implementation Schedule**

    Restoration Work Plan:
    Submit Plan to EPA for review:                          January 15, 2023
    Receive Comments from EPA:                          January 23, 2023
    Revise and Resubmit Plan:                          February 2, 2023
    Harvest Willow Stakes by:                          March 1, 2023
    Apply for all Permits (USACE, ADFG, City of Wasilla)  March 1, 2023
    Commencement of work Notification:                  May 8, 2023
    Restoration Work Start Date:                          May 15, 2023
    (Approximate)
    Completion of work Notification:                  June 8, 2023
    Restoration Work End Date:                          June 15, 2023
    Final Stabilization achieved:                          July 15, 2023

    Completion Report:
    Submit Completion Report:                          August 1, 2023

6

Annual Monitoring Reports:

Submit 1st Year Report                                                August 15, 2024

Submit 2nd Year Report                                                August 15, 2025

Submit 3rd Year Report                                                August 15, 2026

      (if performance standards have not been achieved)

Submit Additional Report(s)                                             As needed

Note: ADF&G Fish Habitat permit in water work window will be followed to prevent impact to spawning anadromous fish. Typically, in water work is allowed between May and July 15.

**Figure 1. Fill Areas to be Removed**

**Figure 2a. Fill material to be removed from the Wetland Fringe Area and below the OHWM of Wasilla Lake (View NW)**



Note: Limit of Jurisdictional Wetlands staked by USACE with pink flagging shown above.

**Figure 2b. Fill material to be removed from the Wetland Fringe Area and below the OHWM of Wasilla Lake (View SE)**



Note: Limit of Jurisdictional Wetlands staked by USACE with pink flagging shown above.

## Figure 3.  Wasilla Lake Shoreline - Existing

# Figure 4. Wasilla Lake Shoreline - Post Fill Removal

# Figure 5a. Revegetation and Landscape Plan Remaining lot (Outside Jurisdictional Wetlands)



## Figure 5b.  Lake Edge Revegetation Detail
### (Shoreline bioengineered willow brush layers and coir log)





BANK RESTORATION PLAN

UNPERMITTED FILL AND CURRENT SITE CONDITION

LAKESHORE SUBDIVISION LOT 3

WASILLA LAKE BANK RESTORATION

SHEET 1

The Boutet Co.



SECTION A-A: BANK RESTORATION

Refer to the Streambank Revegetation and Protection: a guide for Alaska;
Alaska Department of Fish & Game, published 2005.

https://www.adfg.alaska.gov/static/home/library/pdfs/habitat/98_03.pdf

This guide provides guidance for installation, erosion control techniques, plant lists and planting
techniques as well as many recommendations for successful implementation strategies.

Note that some of the recommendations include timing and planning ahead for available plant
material and appropriate planting schedules.

LAKESHORE SUBDIVISION LOT 3

LAKE EDGE
REVEGETATION DETAIL

SHEET 2

tbc
The Boutet Co.

OWNER:
ROHERT YUNDT HOMES, 357 PARKS HWY. #200, WASILLA, AK 99654

LEGAL DESCRIPTION:
LAKESHORE SUBDIVISION BLOCK 2, LOT 3

PHYSICAL ADDRESS:   (LOT3) 1165 E. WESTPOINT DRIVE, WASILLA, AK

# Appendix D

**Restoration Work Plan**

CWA-10-2022-0006

**For the Lot 24A East Cherry Circle on Cottonwood Lake**
**In Wasilla, Alaska**


**Submitted by Robert Yundt Homes**
**On February 27, 2023**

**Restoration Work Plan**

1. **Fill Removal Plan**

   Robert Yundt Homes (RYH) will self-perform this work with oversight and guidance from The Boutet Company, Inc. (TBC) to remove the fill material that encroaches within the wetland fringe area of Cottonwood Lake, install temporary silt fencing along remaining wetland edge to protect the lake and wetland areas from fill material, reshape embankment per Figure 1, and place topsoil, seed and temporary and permanent erosion control materials to stabilize slopes.

   A plan prepared by TBC shows existing and proposed contours, as well as the wetlands demarcation as defined by the U.S. Army Corps of Engineers. The area of wetlands that previous fill (beyond the septic absorption system) had impacted is 335 square feet. The attached asbuilt survey shows the building pad, with no foundation. Since that asbuilt, a foundation and septic system have been installed, with the foundation being placed 5 feet to the north of the wetland limits. Prior to commencement of work TBC will stake the wetland boundary and perimeter of the fill removal area. The unpermitted fill (approximately 52 cubic yards) within the 406 square foot wetland area will be removed and reshaped to provide the area for wetland revegetation. Proposed slopes range from 3 horizontal to 1 vertical, to 1.5 horizontal to 1 vertical. Slopes will receive Rolled Erosion Control Products.

   All removed fill material will be hauled offsite to be disposed in an upland area. Usable fill material (i.e. topsoil, clean gravel) may be used onsite in an upland area or hauled to a different site for reuse. All unusable material will be hauled to a local gravel pit for disposal. Material may be placed onsite either temporarily or permanently in the area shown on the plans. All disturbed soils shall be stabilized after placement.

2. **Permitting**

   Robert Yundt Homes will submit this work plan along with additional supporting documents to obtain necessary permits to work within the fringe wetlands of Cottonwood Lake and complete the restoration work. Permitting for the restoration work is anticipated to be minimal. A USCOE Section 404 Permit is anticipated for the fill removal within the wetlands and to permit the fill to remain for the absorption system. This property is not within any incorporated City. The Matanuska Susitna Borough does not regulate earth disturbing work of this nature.

   Permitting Schedule:

   | | |
   |---|---|
   | USACE Wetland Fill Permit Submittal | March 15, 2023 |
   | Response to Comments, as needed: | April 15, 2023 |
   | Receive Permits: | May 15, 2023 |

3. **Descriptions of Work**

   Start Date: As soon as seasonal weather allows, and permits have been secured. (Spring/summer of 2023)

2

End Date: Work is anticipated to require less than a week.

Contractor:
     Robert Yundt Homes – (907) 373-7941

Project Management/Coordination:
     Tim Alley, PE
     Project Manager
     The Boutet Company, Inc.
     (907) 357-6760

     Trent Farris
     On-site Representative/Project Inspector
     The Boutet Company, Inc.
     (907) 354-8212

     Note: Project Manager may change staffing depending on availability. Any changes will be finalized before the preconstruction meeting and approved by EPA.

Anticipated Equipment:
     Skid steer loader on rubber tracks
     Excavator (mini to midsize) on rubber tracks
     Dump Truck

**4. Best Management Practices**

Silt fencing will be used to protect existing/remaining fringe wetlands during the restoration work. After completion of the restoration work, delineation of the wetland will be installed to prevent further encroachment.

All work that can be done by hand will be to protect sensitive areas.
Rolled Erosion Control Products shall be installed per the figures.

**5. Revegetation Plan**

A Revegetation Plan has been prepared by The Boutet Company. Disturbed areas will be topsoiled and seeded. Slopes shall have RECP installed to support stabilization while vegetation is established.

Seed mixes have been specified below per Municipality of Anchorage Standard Specifications:

3

| Wetland Seed Mix (2.5lb/1000sf) | | | |
|---|---|---|---|
| Name | Proportion by Weight | Purity | Germination |
| Red Fescue (Boreal) *Festuca rubra ruba* | 30% | 90% | 85% |
| 'Nortran' Tufted Hairgrass *Deschampsia Caespitosa* | 40% | 90% | 85% |
| Egan American Sloughgrass *Beckmannia syzigachne 'Egan'* | 30% | 90% | 85% |

| Revegetation Seed Mix (2.5lb/1000sf) | | | |
|---|---|---|---|
| Name | Proportion by Weight | Purity | Germination |
| 'Nortran' Tufted Hairgrass *Deschampsia caespitosa* | 50% | 90% | 85% |
| Red Fesuce (Boreal) *Festuca rubra ruba* | 40% | 90% | 85% |
| Annual Rye *Lolium multiflorum* | 10% | 90% | 85% |

6. **Notification**

At least seven (7) days prior to commencing activities at the
Site under the EPA-approved Final Restoration Work Plan, Respondent shall notify the
EPA representatives identified in Paragraph 6.1 of the Administrative Order On Consent.

At least seven (7) days prior to completion of the work contractor or project manager
shall notify EPA, MSB and USACE to arrange a site visit with the contractor and project
manager for a final acceptance inspection. The contractor shall remedy any deficiencies
found during the site visit.

Attn: Mark Jen, Inspector/Case Officer
U.S. Environmental Protection Agency
Region 10, Alaska Operations Office
222 West Seventh Avenue, No. 19
Anchorage, Alaska 99513

Attn : Patrick Johnson, Attorney
U.S. Environmental Protection Agency
Region 10, Alaska Operations Office
222 West Seventh Avenue, No. 19
Anchorage, Alaska 99513

4

Attn: Shane McCoy, South Section Chief
US Army Corp of Engineers
Alaska District
2204 3rd Street
JBER, AK 99506-0898

**7. Completion Report**

Within 30-days of completing the restoration work, a Completion Report, which shall include photographs of the Site conditions before and after, will be submitted to EPA for review and approval. The Completion Report shall include photographs taken from fixed locations shown on the attached plan and include a written narrative.

By October 15, 2023, TBC will provide a professionally licensed survey to delineate the applicable portion of Lot 24A to remain undisturbed in perpetuity, which shall include that area within the wetland line waterward toward the shoreline of Cottonwood Lake. The survey shall include all existing improvements including the house foundation and mounded septic system infrastructure and the proposed locations on Lot 24a for (1) an elevated pile supported walkway to the Cottonwood Lake shoreline, (2) pile supported floating dock, (3) airplane hangar, and other planned development features, if this is still requested.

**8. Monitoring Plan**

The site shall be monitored for the following 3 years after completion. The site will be inspected for establishment and viability seeding to ensure 75% growth of planted materials is maintained during the monitoring period.

Annual monitoring reports shall be submitted to EPA on or before the first, second, and third anniversaries of EPA's approval of the Completion Report. Each annual monitoring report shall include photographs taken from fixed locations shown on the attached plan and shall include a written narrative that details the results of that year's monitoring activities, and maintenance actions conducted and any adaptive management actions implemented, and deviations from the monitoring protocols. Each annual monitoring report shall also describe any potential problems observed and recommended changes to the monitoring protocols or performance standards.

**9. Contingency Plan**

RYH will continue to monitor the performance of the reconstruction work for three years. Reapplication of seed will be completed as needed to maintain a minimum 75% vegetation establishment.

**10. Implementation Schedule**

<u>Restoration Work Plan</u>

| | |
|---|---|
| Submit Plan to EPA for review: | January 15, 2023 |
| Receive Comments from EPA: | January 23, 2023 |
| Revise and Resubmit Plan: | February 2, 2023 |
| Apply for all Permits (USACE) | March 15, 2023 |
| Commencement of work Notification: | May 8, 2023 |
| Restoration Work Start Date: | May 15, 2023 (Approximate) |
| Completion of work Notification | June 8, 2023 |
| Restoration Work End Date: | June 15, 2023 |
| Final Stabilization achieved: | July 15, 2023 |

<u>Completion Report</u>

| | |
|---|---|
| Submit Completion Report: | August 15, 2023 |

<u>Declaration of Environmental (Restrictive) Covenant (Consent Order/Paragraph 5.9; CWA-10-2022-0006)*</u>

| | |
|---|---|
| Submit Professionally Licensed Survey of Lot 24A | October 15, 2023 |
| EPA Reviews/Approves Survey of Lot 24A | October 25, 2023 |
| Submit Final/Executed Declaration of Environmental Covenant | November 5, 2023 |
| EPA Reviews/Approves Declaration of Environmental Covenant | November 15, 2023 |
| Record Certified Order & Declaration - Palmer Recording District | November 25, 2023 |
| (ADNR Recorder's Office in Anchorage, AK.) | |

<u>Annual Monitoring Reports:</u>

| | |
|---|---|
| Submit 1st Year Report | July 1, 2024 |
| Submit 2nd Year Report | July 1, 2025 |
| Submit 3rd Year Report | July 1, 2026 |
| (if performance standards have not been achieved) | |
| Submit Additional Report(s) | As needed |

## Figure 1. USACOE Wetlands Delineation



**POA-2019-00233**

Robert Yundt Homes LLC
Cottonwood Shores Lot 5A, 6A, 24A

**Legend**
- Cryoquents depressional 0 - 7 percent slopes
- Knik silt loam, steep and sloping
- Water

200 ft

# Figure 2. Cottonwood Lot 24A Asbuilt

# Figure 3. Wetland Fill Removal Plan

# Figure 4. Restoration Cross Section





